1                UNITED STATES BANKRUPTCY COURT

                  SOUTHERN DISTRICT OF FLORIDA

2

3

4

IN RE:                      CASE NO. 09-36408-BKC-LMI

5

CAPITOL INVESTMENTS USA,

6   INC.,

7              Debtor.

    _____/

8

9           ***EXCERPT FROM PROCEEDINGS***

10

11    ASSERTION OF THE DEBTOR'S FIFTH AMENDMENT PRIVILEGE

                  (62), (63), (64)

12

13               February 1, 2010

14

15              The  above-entitled cause  came  on for

16   hearing before the HONORABLE LAUREL MYERSON ISICOFF,

17   one  of the Judges  in  the UNITED STATES BANKRUPTCY

18   COURT,  in and for the SOUTHERN DISTRICT OF FLORIDA,

19   at 51 SW 1st  Avenue, Miami,  Dade County,  Florida

20   on Monday, February 1, 2010, commencing at  or about

21   10:00 a.m., and  the following proceedings were had:

22

23               Reported By:  Margaret Franzen

24

25

1              APPEARANCES:

2

3       TABAS FREEDMAN SOLOFF MILLER & BROWN, by
                GARY M. FREEDMAN, ESQUIRE
4           ANDREA L. RIGALI, ATTORNEY-AT-LAW
                 on behalf of the Trustee

5

6

            STEARNS WEAVER MILLER WEISSLER
7              ALHADEFF & SITTERSON, by
             KRISTOPHER E. PEARSON, ESQUIRE
8         on behalf of Cybur Investments, LLC

9

10       KOZYAK TROPIN & THROCKMORTON, by
                DAVID L. ROSENDORF, ESQUIRE
11       on behalf of the Petitioning Creditors

12

13           PETER F. VALORI, ESQUIRE
              on behalf of Nevin Shapiro

14

15              - - - - - - -

16

17

18

19

20

21

22

23

24

25

```
 1              *** EXCERPT FROM PROCEEDINGS ***

 2              THE COURT:  So that takes us to the motions

 3    for protective order, Dockets Entry 62, 63 and 64,

 4    the discussion or argument of which is going to be

 5    today the assertion of Kevin --

 6              MR. VALORI:  Nevin.

 7              THE COURT:  I'm sorry, it's been an odd

 8    morning.  Okay.  -- to the Fifth Amendment

 9    privileges, okay.  So I have reviewed the motion --

10    the motions, I have reviewed the response, and,

11    Mr. Valori, I have reviewed the reply that you filed

12    yesterday, but without calling my office.  It was

13    only fortuitous that I happened to find it this

14    morning.

15              MR. VALORI:  I apologize for that, your

16    Honor.  I just received the response on Thursday

17    afternoon.

18              THE COURT:  I understand, but as I've said

19    to people, I don't have a little red button that goes

20    off.  So unless you call my Chambers, I don't

21    normally see something unless, like this morning, I

22    happened to go back to look at the matter to look

23    something up, because I don't prepare for court the

24    same morning, especially not something like this, but

25    having said that, I did review your reply.
```

1          Okay.  So I've done that.  I read the

2     case law cited by both sides.  So, Mr. Valori,

3     I'm going to ask you a question.

4          MR. VALORI:  Yes, your Honor.

5          THE COURT:  Actually, I'm going to ask you

6     a few questions.

7          MR. VALORI:  Yes, your Honor.

8          THE COURT:  All right.  The first question

9     I have for you is:  Where in the case law does the

10    arguments you make extend to third parties that are

11    in possession of documents in the absence of there

12    being another privilege that cloaks the documents?

13    So you understand my question?

14         MR. VALORI:  I do fully, your Honor --

15         THE COURT:  Okay.

16         MR. VALORI:  -- understand your question, I

17    believe.  Your Honor, there's a case called In Re:

18    Grand Jury Subpoena ABC, Inc. that we cite in our

19    memorandum.

20         THE COURT:  I read it.

21         MR. VALORI:  In that case -- there's also

22    another case cited, which is In Re:  Grand Jury

23    Subpoena Kent.

24         THE COURT:  I read that one, too.

25         MR. VALORI:  They outline the constructive

1  possession doctrine and that's the doctrine that

2  we're relying upon, your Honor.

3           THE COURT:  Okay.  But explain to me why

4  you believe that documents placed in the hands of,

5  for example, an investigator, in the absence of it

6  being covered by the work product privilege, because

7  I think we can all agree that's not covered by

8  attorney/client privilege.

9           MR. VALORI:  Yes, your Honor.

10          THE COURT:  Okay.  So in the absence of you

11  being able to demonstrate that those documents are

12  covered by the work product privilege, why would that

13  satisfy the constructive possession argument that

14  you're making?  Because I reviewed those cases and I

15  don't see that there is an analogous situation.

16          So walk me through why you believe it's

17  analogous.

18          MR. VALORI:  Okay.  Okay, your Honor.

19  Well, as to documents that are in possession of an

20  attorney and an investigator who is hired by an

21  attorney, I think the constructive possession

22  doctrine could extend.  For example, with respect to

23  Mr. Koslow, he is an attorney.  He represents the

24  person invoking, essentially standing in that

25  person's shoes.  There is no higher fiduciary duty

Page 6

1     role than one of attorney/client.

2            So I think that certainly as to

3     Mr. Koslow, the constructive possession doctrine

4     is the strongest.

5            Now documents that are in possession of

6     an investigator hired by an attorney, I agree

7     with you, there are no specific cases that I

8     found directly on point.  However, the case law

9     is clear, and at least in several cases I've

10    read, you know, they say that the privilege is to

11    be liberally construed in favor of the right it

12    was intended to secure.

13            THE COURT:  No, no, I understand that and I

14    will let you know, just so you don't waste any cosmic

15    energy on it, I accept for purposes of today your

16    argument that there can be a privilege extended to

17    the production of documents by a party that would

18    create a nexus.  Okay.  I understand all that.

19            But what I'm asking you is:  Why, if

20    Mr. Shapiro voluntarily provided documents to

21    anybody, in the absence of, as I said,

22    attorney/client or work product, and, of course,

23    Mr. Koslow is an attorney, so we'll go to that

24    detail in a minute, why did those documents all

25    of a sudden get sprinkled with Fifth Amendment

1    fairy dust when someone goes to that third party?

2    Remember, every case you cited to me, except for

3    the two this morning, the discovery was directed

4    against the defendant/debtor, not always the

5    debtor, there were only a couple, Heller it's the

6    debtor, but the defendant in every single case.

7            So if Mr. Shapiro voluntarily produced

8    a document to Joe Shmo, and the trustee goes to

9    Joe Shmo and says, give me the document, unless

10   that document is protected by work product or

11   attorney/client, how is there a Fifth Amendment

12   privilege?

13           MR. VALORI:  Well, the only doctrine under

14   which there could be is the constructive possession

15   doctrine, your Honor, and I will fully submit to the

16   Court that I did not find a specific case.

17           However, I think that the cases that we

18   did cite would be broad enough to construe it and

19   with this particular type of right, it's a cat

20   out of the bag situation.  If it's not asserted,

21   it's waived.

22           So, you know, I think the prudent thing

23   for me to do as counsel on behalf of Mr. Shapiro

24   is assert all of these privileges.  I think

25   certainly the attorney work product privilege

1    more strongly would cover these things,

2    especially with respect to the investigator and

3    other non-testifying expert.

4            THE COURT:  Assuming you can demonstrate

5    work product.

6            MR. VALORI:  Correct, your Honor, which

7    we'll attempt to do on March 8th, the second phase of

8    this hearing.  And I agree with you, that this is not

9    the clearest right, but, however, I think it's my

10   duty as counsel for Mr. Shapiro to assert it.

11           Do I have specific case law that covers

12   this exact situation?  No.  However, there is a

13   doctrine that is in play, which I believe could

14   be construed by the Court to cover it.  So rather

15   than waive an extremely important right of my

16   client, I've chosen to assert it and --

17           THE COURT:  Okay.

18           MR. VALORI:  -- I'll be perfectly honest

19   with the Court.

20           THE COURT:  And I appreciate that, but

21   let me then ask you the next question.  I'm just

22   going to go to Heller, which is your most oft cited

23   case --

24           MR. VALORI:  Yes, your Honor.

25           THE COURT:  -- in your submissions, and I'm

Page 9

1    looking at -- I think we can all agree that

2    Judge Glenn did a very thorough job of his summaries

3    on these issues.  I'm reading from Page 400, and

4    Judge Glenn citing various and sundry Supreme Court

5    cases, and other cases, writes, "The person invoking

6    the privilege must establish that the risk of

7    incrimination resulting from their testimonial

8    communications must be substantial and real and not

9    trifling or imaginary haphazards of communication.

10           To properly invoke the privilege, a

11   debtor must produce for the Court credible

12   reasons why his answers would incriminate him.

13   The debtor must substantiate his claim that

14   responding to the specific request for

15   information may tend to incriminate him."

16           And then, of course, it goes on to say

17   that in certain cases the manner in which you do

18   that has to be -- has to be less than a full

19   judicial presentation because that would sort of

20   moot the issue.  Okay.

21           But, of course, I saw other cases cited

22   by you and by Mr. Freedman where the Court did an

23   in camera review.  All you have done is say,

24   this is my client's Fifth Amendment privilege.

25   That doesn't meet the standard.

```
 1            MR. VALORI:  Well, you're right, there is a
 2   balancing, I believe, your Honor, between saying too
 3   little and saying too much, and saying too much
 4   waives essentially whatever privilege there was
 5   because it's the act of production itself that's
 6   testimonial.
 7            THE COURT:  But have you made the effort to
 8   go through even -- I didn't see a motion to file
 9   something under seal.
10            MR. VALORI:  Well, yes, your Honor.  First
11   of all, I have made the effort.  As to -- I've spoken
12   with each of these persons and entities,
13   representatives thereof that have been subpoenaed.  I
14   have reviewed Mr. Koslow's documents, some in detail,
15   some in a more cursory review.  There are
16   approximately 12 boxes of documents there.  There are
17   less from the other witnesses.
18            My concern was, your Honor, that
19   explaining to the Court what these boxes
20   contained and describing these different
21   transactions, again, would put forth what their
22   content is and would sort of destroy the point.
23            Now ---
24            THE COURT:  Well, in camera it's not going
25   to do it because unless somebody has really expanded
```

1  my Article 1 powers over the weekend without telling

2  me, I am not going to hear any criminal matter that

3  emanates from this case.

4          MR. VALORI:  But -- and I understand, your

5  Honor, and if an in camera inspection is appropriate,

6  we will bring the documents for your Honor to review.

7          THE COURT:  Well, you tell me what's not.

8  All you have done is say these folks have documents,

9  my client's Fifth Amendment rights could be

10 compromised.

11         MR. VALORI:  Well, certainly he has a

12 realistic fear.  I would assume --

13         THE COURT:  But you can't -- you can't ---

14         MR. VALORI:  -- your Honor would agree.

15         THE COURT:  Well, I don't know because I

16 haven't gotten to know Mr. Shapiro that well yet or

17 to know the facts of the case that well yet.

18         MR. VALORI:  Understood, your Honor.

19         THE COURT:  All I know is there was a door

20 with a note posted on it, that's the extent of my

21 knowledge of this case so far, whatever was brought

22 up at the first hearing.

23         So, your client, or you, have an

24 obligation to establish what that real fear is --

25         MR. VALORI:  Uh-huh.

1          THE COURT:  -- correct?

2          MR. VALORI:  Yes, your Honor, and I believe

3     even in the trustee's response, the proffer included

4     a claim that Mr. Shapiro engaged in fraud in

5     operating the entity at issue.

6          THE COURT:  That goes to the general

7     statement, that does not mean that every piece of

8     paper asked for meets the standards for Fifth

9     Amendment protection that you argue.

10         MR. VALORI:  Understood, your Honor, and if

11    an evidentiary hearing is required, or if an in

12    camera inspection is required, I'd request that.

13         THE COURT:  Well, first a better answer is

14    required.

15         MR. VALORI:  Understood, your Honor.

16         THE COURT:  Because I have no basis to --

17    assuming that I accept your constructive possession

18    argument, which having reviewed In Re: Grand Jury

19    Subpoena, 646 F.2d 963, which is a 5th Circuit 1981

20    case, assuming I accept that, because, of course, the

21    other case went the other way.

22         MR. VALORI:  Understood, your Honor.

23         THE COURT:  The case with the Westlaw cite,

24    the Court said it didn't meet it.

25         MR. VALORI:  That's correct, your Honor.

1          THE COURT:  So if I accept your -- if I

2     don't accept your constructive possession and,

3     frankly, it's highly unlikely --

4          MR. VALORI:  Understood, your Honor.

5          THE COURT:  -- then we have to get to the

6     other privileges, in any event.

7          MR. VALORI:  Understood, your Honor.

8          THE COURT:  And so, perhaps, rather than

9     requiring your client or you to go through the effort

10    of the Fifth Amendment privilege in the first place,

11    the first step is to see if there's any other

12    protections because I think if I find -- I'm likely

13    to rule -- well, no, I'm absolutely going to rule, if

14    I don't accept your constructive possession argument,

15    which on first reading of the Grand Jury Subpoena

16    case I did not find that there were parallels, I

17    think I would certainly need to hear evidence as to

18    why you believe construction possession would apply,

19    and perhaps that is better served at the same time

20    that I'm hearing why or to what extent the work

21    product or attorney -- well, the attorney/client is

22    only going to be as to Koslow because there is no

23    attorney/client privilege for a non-attorney.

24          MR. VALORI:  That's correct, your Honor.

25          THE COURT:  Right.  It's only the work

1   product; right?

2            MR. VALORI:  I agree.

3            THE COURT:  Okay.  So it seems to me that,

4   perhaps, that would all need to be done at an

5   evidentiary hearing.

6            Let me ask you a question, March 8th,

7   is that a specially set hearing or did you all

8   take another ten-minute hearing?  You did notice,

9   didn't you, all of you, the notice of hearing

10  said ten minutes --

11           MR. VALORI:  Yes, your Honor.

12           THE COURT:  -- and we've already gone 20?

13  Okay.  Is that set for special hearing?

14           MR. VALORI:  I don't believe it is, your

15  Honor.

16           THE COURT:  Okay.

17           MR. VALORI:  I believe it was set by your

18  order and it was another ten-minute hearing.  So, you

19  know, I wasn't prepared to present evidence this

20  morning.

21           THE COURT:  And nor would I take it this

22  morning because we have other people waiting and this

23  is my quick calendar.

24           MR. FREEDMAN:  Your Honor, I will take

25  blame for not following up with your calendar clerk.

1    However, the motion that we did submit as a joint

2    motion did lay out the fact that we thought at that

3    point in time the Court would need to take evidence

4    on what we thought was going to be work product and

5    attorney/client privilege issues.

6              THE COURT:  Okay.

7              MR. FREEDMAN:  That was indicated in the

8    motion.

9              THE COURT:  All right.  Well, sometimes,

10   though, I know we only have 2900 cases, so we're

11   usually pretty on top of this, but if you see

12   something that has been set in that little ten-minute

13   thing, just call Ms. Sanabria and she will

14   accommodate you.

15             MR. FREEDMAN:  I understand, your Honor.

16   We will follow up.

17             THE COURT:  All right.  No nights or

18   weekends.

19             Okay.  So your position, Mr. Valori, if

20   I understand it, is you're relying on the

21   constructive possession argument that's --

22             MR. VALORI:  Yes, your Honor.

23             THE COURT:  -- set forth by the 5th Circuit

24   in In Re: Grand Jury Subpoena.

25             MR. VALORI:  Correct, your Honor.

```
 1              THE COURT:  Okay, and other than that, you
 2   would have to fall back on either attorney/client
 3   with respect to Mr. Koslow or work product with
 4   respect to Franklin Investigations and Gerson
 5   Preston.
 6              MR. VALORI:  Yes, your Honor.
 7              THE COURT:  All right.  Now, I have one
 8   other question for you.
 9              MR. VALORI:  Yes, your Honor.
10              THE COURT:  If I can remember it.  It's
11   very sad when this happens.  Okay.  The subpoenas
12   that were issued all sought documents relating both
13   to Capitol and to Mr. Shapiro?
14              MR. VALORI:  Correct, your Honor.
15              THE COURT:  Okay, and you understand,
16   having practiced in this arena, that if there are
17   Capitol records, they are not -- Mr. Shapiro cannot
18   assert the privilege even if they incriminate him?
19              MR. VALORI:  Absolutely.
20              THE COURT:  Okay.
21              MR. VALORI:  Within two days of the trustee
22   being appointed, we turned over all of the paper
23   files.  Mr. Koslow has one Capitol file.  His
24   attorney, Mr. Fink, sent a letter to, I believe,
25   Mr. Freedman saying there is one Capitol file, you're
```

1   welcome to it and offered that up.  I do fully

2   understand that -- that concept.

3           THE COURT:  Okay.  But that goes with

4   respect to Gerson Preston and Franklin

5   Investigations, also.

6           MR. VALORI:  Understood, your Honor, and

7   Gerson is -- well, the issue of who hired or who were

8   they employed by, is, I think, something that if it's

9   disputed, you'd need to hear evidence on.

10          THE COURT:  Okay.

11          MR. VALORI:  You'd have to hear from the

12   attorney who hired those experts.

13          THE COURT:  Right.  You're talking about

14   Mr. Lewis in the one case and your firm, Mr. Entin, I

15   believe you said.

16          MR. VALORI:  Well, Mr. Entin is here, who

17   is Mr. Shapiro's current criminal counsel, who is

18   using Franklin Investigations.  I also used Franklin

19   Investigations.  Prior to that, Guy Lewis used

20   Franklin Investigations, and prior to that, other

21   attorneys hired by Mr. Shapiro used Franklin

22   Investigations.

23          So -- and Franklin Investigations also

24   did certain work, I believe, that was routine

25   work for the company, which involved a background

1   check here or so, which ---

2         THE COURT:  Well, none of that is

3   privileged.

4         MR. VALORI:  Absolutely.

5         THE COURT:  Okay.

6         MR. VALORI:  Absolutely.  Now, some of

7   these documents are intermingled with other things,

8   for example, but the subpoena is so broad, it could

9   cover someone's entire e-mail in-box.

10         THE COURT:  Okay.  Well, that we'll have to

11   go through on, not the 8th anymore.  I think what

12   you're going to need to do is tell Ms. Sanabria you

13   need a half a day.

14         MR. VALORI:  Correct.  Yes, your Honor.

15         THE COURT:  Okay.

16         MR. VALORI:  Just the process of going

17   through all of the documents, specifically

18   Mr. Koslow's, which were extensive, and preparing a

19   privilege log, which I think we would need to do in

20   order to at least identify for the Court what's

21   claimed privilege and what's not, it's a fairly

22   extensive process.

23         THE COURT:  Well, I suggest you get

24   started.

25         MR. VALORI:  We have started already and,

1    you know, there's just work to be done, that's all.

2            THE COURT:  I understand.  All right.  Let

3    me hear from Mr. Freedman.

4            Mr. Freedman, do you have anything to

5    add or address regarding Mr. Valori's

6    constructive possession argument?

7            MR. FREEDMAN:  I guess the first concept in

8    respect to that position, your Honor, is I find it

9    nowhere in the paper.

10           I looked at the three motions for

11   protective order.  In fact, only two of them

12   appear to assert Fifth Amendment privilege

13   issues, that's in respect to the Koslow

14   production and the Franklin production, but no

15   where in either of those papers does the debtor,

16   individual debtor, assert some claim that these

17   third parties, the subject of these subpoenas,

18   are only in constructive possession of the

19   documents.  So on that basis alone, I don't think

20   that that argument can be advanced.

21           Secondly, your Honor, in the case of

22   the 11th Circuit, in Grand Jury Investigation,

23   also known as Heller, at 921 F.2d 1184, it's an

24   11th Circuit case decided in 1991.  That case

25   discusses the ability to subpoena documents in

1    the hands of a third party in the face of a Fifth

2    Amendment challenge.

3            Specifically in that case, it related

4    to the production of an attorney's trust account

5    records in the hands of his legal secretary and

6    the 11th Circuit stated there, and discussed,

7    that under the circumstances of that case, those

8    documents weren't in the constructive possession

9    of the legal secretary, and there was no right to

10   assert a Fifth Amendment privilege by the

11   individual.

12           And, in particular, the 11th Circuit in

13   that case cited to U.S. vs. Jones, found at 630

14   F.2d 1073, it's a 5th Circuit case decided in

15   1980, which is binding in this circuit.  And in

16   Jones v.  -- excuse me, U.S. vs. Jones, the Court

17   stated that the party could successfully retain

18   constructive possession only, only where the

19   documents were left in the hands of mere, quote,

20   "custodial bailees or naked possessors who had no

21   knowledge of the contents of the records in their

22   custody, and were not to use them for any

23   purpose."

24           So not only has the individual debtor

25   here not asserted in his moving papers any issue

1    of constructive possession, even in Mr. Valori's

2    attempt to glom onto the doctrine, we've heard

3    nothing that -- and it would be hard to believe

4    that Mr. Koslow, Franklin Investigators or

5    Gerson, to the extent it applies, were mere

6    custodial bailees or naked possessors who had no

7    knowledge of the contents of those records and

8    were not to use them for any purpose.  So on that

9    ground I don't think it applies.

10           And then in the case cited in the memo

11   filed last night, that we looked at this morning,

12   the Westlaw cited case out of the District of

13   Massachusetts, in there the subpoena was directed

14   to an entity previously owned by the individual

15   who was asserting the Fifth Amendment privilege,

16   and the Court specifically held that the

17   constructive possession doctrine did not apply to

18   those records.

19           So in this circumstance, given that

20   there's no argument previously made, there's no

21   even proffer that under this circuit's case law

22   that it could even apply, I don't think it ought

23   to apply and we ought to move on.

24           THE COURT:  Okay.  Well, I think I made it

25   fairly clear to Mr. Valori that I don't think it

1  applies, but I certainly appreciate -- although I

2  don't -- I did read the Heller case, but I didn't --

3  I agree, I didn't think -- I thought that it didn't

4  help.  But, of course, if Mr. Valori was able to

5  establish at an evidentiary hearing that, in fact,

6  this private investigator, this accounting firm or

7  their lawyer never looked at the documents and just

8  held them in trust, that arguably there might

9  potentially be a constructive possession claim,

10  however unlikely, but Mr. Valori would have to

11  specifically make that allegation and prove it;

12  correct?

13         MR. FREEDMAN:  To the extent it hasn't been

14  waived, your Honor, because it wasn't raised in the

15  initial motion, that would be our position.

16         I mean, the motion for protective order

17  frames the issues, and that goes back to the

18  Court's second question to Mr. Valori, and it

19  really relates to a burden determination and, you

20  know, again, I read the motions this morning and

21  looked at the Koslow motion, in particular, and

22  it really is just sort of a blanket assertion of

23  the Fifth Amendment privilege without any

24  particulars as to form, substance, what it

25  relates to, what the concern is, what the

1    threatened criminal prosecution is.

2         And the Court cited to Judge Glenn's

3    case in Heller, and Judge Glenn, you know, I

4    think the Court correctly stated, laid out a good

5    analysis of what those burdens are.  In fact, in

6    our moving papers, we also raised the same issue.

7         We cited two cases that Mr. Valori

8    didn't cite to, the Scarfia vs. Holiday Bank case

9    at 129 BR 671, that's a bankruptcy case out of

10   the Middle District of Florida, and the Butcher

11   vs. Bailey case at 753 F.2d 465, that's a

12   6th Circuit case decided in 1985.

13        And both those cases stand for the

14   general proposition that a debtor may not assert

15   blanket Fifth Amendment privilege stating that

16   production of documents will incriminate him.

17   The Scarfia case goes on and says, debtor must

18   produce to the Court credible reasons why the

19   production of documents would incriminate him.

20   That hasn't happened here, your Honor.

21        Again, we have this blanket assertion

22   of the Fifth Amendment privilege, this vague

23   motion for protective order without any teeth to

24   it.  And I submit to the Court, based upon

25   Judge Glenn's case and Scarfia and Butcher, it is

Page 24

1   this individual debtor's obligation in invoking

2   or seeking to invoke the Fifth Amendment

3   privilege, that he has the burden of proof, the

4   burden, at least to put on a prima facie showing

5   why the Fifth Amendment privilege ought to apply

6   and once he does that, well, maybe on March 8th,

7   or whenever that matter is set, we can get into

8   the evidentiary support for it.  But we don't

9   even get there, your Honor, because the burden

10  not only hasn't even been met, it hasn't -- this

11  debtor hasn't even attempted to put on a case of

12  why the Fifth Amendment privilege ought to apply

13  here.

14              THE COURT:  Okay.  Thank you, Mr. Freedman.

15              I just want to admonish everybody in

16  this courtroom, for either the -- this case or

17  the All for the Earth Foundation case, when you

18  get a notice of hearing that says this matter has

19  not been set for evidentiary hearing, it's been

20  set for ten minutes, you need to call my

21  courtroom deputy and say to my courtroom deputy,

22  either one, this was supposed to be an

23  evidentiary hearing, which is the All for the

24  Earth, it was supposed to be set as an

25  evidentiary hearing and it wasn't, and we are

1   going to need more than ten minutes, okay.

2           And, you know, because as I said, and I

3   said a little bit tongue in cheek, we're handling

4   over 2900 cases and it's an awful lot for you all

5   to expect me or my courtroom deputy to remember

6   in each instance that something is going to take

7   a little more time, and it's not fair to you all,

8   and it's not fair to the people that are waiting

9   behind you.

10          Having said that, this was never

11  intended to be set for an evidentiary hearing

12  today, okay, and while I appreciate that the

13  agreement was to go forward on the Fifth

14  Amendment this morning, I'm going to treat this

15  as a preliminary hearing.

16          I'm going to tell you now, Mr. Valori,

17  that I don't buy your constructive possession

18  argument.  That does not mean that at an

19  evidentiary hearing, that if you have witnesses

20  that will testify under penalty of perjury that

21  they were caretakers of documents,

22  notwithstanding they were hired by attorneys to

23  provide a service, then I'll hear that evidence.

24          But I'm going to guess, as Mr. Freedman

25  alluded to, that the very nature of asserting a

1    work product privilege is to presume that these

2    professionals were hired for the purpose of

3    rendering advice of some kind, which means that

4    they would actually look at something.

5            MR. VALORI:  Yes, your Honor, I can save

6    the Court a lot of time.  I'm not going to be able to

7    present evidence that this was a mere bailment and

8    that these folks were just holding documents, that

9    was not the concept of my argument.

10            I agree, my argument is seeking to

11   apply case law to a new factual pattern.

12            THE COURT:  I understand.

13            MR. VALORI:  I'll be the first to admit

14   that and I had asked, again, for an interpretation --

15            THE COURT:  And I appreciate that.

16            MR. VALORI:  -- which I think is in the

17   realm of what the case law says, but, however, I

18   fully understand your Honor's position.

19            THE COURT:  Well, I think that -- I

20   appreciate your argument, Mr. Valori.  It certainly

21   falls within the safety margins or margins of safety,

22   but having said that, I'm just saying that to you.

23   * * * * * * * * * * * * * * * * * * * * * * * * *

24            (Judge's ruling is contained within a

25   separate excerpt.)

1

2          (Thereupon, the hearing was concluded.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 28

1

2

3                              CERTIFICATION

4

5    STATE OF FLORIDA:

6    COUNTY  OF  DADE:

7

8              I, Margaret Franzen, Shorthand Reporter

9    and  Notary  Public in  and for the State of Florida

10   at  Large,  do  hereby  certify  that  the  foregoing

11   proceedings  were  taken  before  me  at the date and

12   place  as  stated  in  the caption hereto on  Page 1;

13   that the  foregoing  computer-aided transcription  is

14   a true record of the excerpt requested of my

15   stenographic notes taken at said   proceedings.

16              WITNESS  my  hand  this  23rd  day  of

17   February, 2010.

18

19

20   _____

                      Margaret Franzen

21        Court Reporter and Notary Public

          in and for the State of Florida at Large

22        My Commission Expires:  April 14, 2010

23

24

25