UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:                                 CASE NO.: 09-36408-BKC-LMI
CAPITOL INVESTMENTS USA, INC.,    (Substantively Consolidated)[1]
and NEVIN KAREY SHAPIRO,        CASE NO.: 09-36418-BKC-LMI
                             (Jointly Administered under
                             Case No.: 09-36408-BKC-LMI)
                             Chapter 7

       Debtors.

_____/

### TRUSTEE'S MOTION FOR ENTRY OF ORDER AUTHORIZING SALE OF SHAPIRO ESTATE'S RIGHT TITLE AND INTEREST IN REAL PROPERTY FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES

Joel L. Tabas, as Chapter 7 Trustee of the Bankruptcy Estates of Capitol Investments USA, Inc. and Nevin Karey Shapiro (the "Trustee"), through counsel and pursuant to 11 U.S.C. §§105(a) and 363, Federal Rules of Bankruptcy Procedure 2002, 6003 and 6004 and Local Rule 6004-1 files his Motion for Entry of Order Authorizing Sale of Shapiro Estate's Right, Title and Interest in Real Property Free and Clear of Liens, Claims and Encumbrances (the "Motion"), and as good cause for same, states as follows:

### I. JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

2.      This is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), and (N).

3.      Venue is proper in this jurisdiction pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The last four digits of the taxpayers identification numbers for each consolidated Debtor follow in parentheses: Ocean Rock Enterprises, Inc. (3272), JAT Wholesale, Inc. (7903), and Pink Panther Enterprises, LLC (5240).

CASE NO.: 09-36408-BKC-LMI

## II.  PROCEDURAL AND FACTUAL BACKGROUND

4.      This case commenced on November 30, 2009 (the "Petition Date") with the filing of involuntary Chapter 7 bankruptcy petitions against Capitol Investments USA, Inc. ("Capitol") and Nevin Karey Shapiro ("Shapiro") (collectively, the "Debtor(s)").

5.      On December 10, 2009, this Court entered its Order Granting Motion for Joint Administration into Lead Case 09-36408-BKC-LMI, jointly administering Capitol's bankruptcy estate with Shapiro's bankruptcy estate (the "Shapiro Estate") [*see* DE #17].

6.      On December 30, 2009, this Court entered its Order for Relief in Involuntary Case and Setting Deadline for Filing Schedules, Statement of Financial Affairs and Other Documents (the "Order for Relief")[DE 35].

7.      On December 11, 2009, Joel L. Tabas was appointed Interim Chapter 7 Trustee and on April 22, 2010, the Joel L. Tabas was appointed Chapter 7 Trustee.

### PROPOSED SALE

6.      On March 15, 2010, Shapiro filed bankruptcy schedules reflecting his ownership interest in real property located in Miami-Dade County described as:

> Lot 8, in Block 14, of LA GORCE GOLF SUBDIVISION, according to the Plat thereof, as recorded in Plat Book 14 at Page 43, of the Public Records of Miami-Dade County, Florida
>
> a/k/a 5380 N. Bay Road, Miami Beach, Florida 33140

(the "Property") [*see* Schedule A, DE #229].

8.      Shapiro's Schedule "C" reflects a claimed exemption of the Property pursuant to the Florida Constitution claiming it as Homestead [*see* Schedule C, DE #229].

2

CASE NO.: 09-36408-BKC-LMI

9.      On July 1, 2010, the Trustee filed an Objection to Shapiro's claimed exemption of the Property advising the Court that Shapiro had orally agreed to (1) waive his interest in the Property and (2) the sale of the Property with the proceeds to be distributed for the benefit of the creditors of the Shapiro Estate [*see* DE #598]; and on August 11, 2010, the Court sustained the Objection [DE #681].

10.     Accordingly, the Trustee is authorized to sell the Property.

11.     On or about February 4, 2011, Trustee entered into an "As Is" Residential Contract for Sale and Purchase and an Addendum thereto (the "Sale Contract") with Rex Runzheimer and/or assignee ("Buyer"), pursuant to which the Trustee agreed to sell the Shapiro Estate's right, title and interest in the Property to Buyer for a purchase price of $5,740,000.00 (the "Purchase Price"), subject to the Court entering a final non-appealable order approving Trustee's sale of the Property pursuant to the Sale Contract (a "Final Sale Order").  A true and correct copy of the Sale Contract is attached hereto as Composite Exhibit "A" and incorporated herein by reference.

12.     Trustee proposes to sell the Property to Buyer, outside of the ordinary course of business, and free and clear of all liens, claims and encumbrances, pursuant to 11 U.S.C. § 363, at a hearing to be held at the United States Bankruptcy Court, Southern District of Florida, 51 S.W. First Avenue, Courtroom 1410 (the "Sale Hearing").

13.     Buyer has provided the Trustee with a copy of its commitment for title insurance (the "Title Commitment") to be issued to Buyer in connection with the parties' closing under the Sale Contract (the "Closing"), so Trustee can provide notice of this Motion to all interested parties.

Tabas, Freedman, Soloff Miller & Brown, P.A. • One Flagler Building, 14 Northeast First Avenue, Penthouse, Miami, Florida 33132 • (305) 375-8171

CASE NO.: 09-36408-BKC-LMI

14.    First mortgage holder, Deutsche Bank National Trust Company, as Trustee of the IndyMac INDA Mortgage Trust 2007-AR8, Mortgage Pass-Through Certificates, Series 2007-AR8 under the Pooling and Servicing Agreement dated November 1, 2007, its Successors and/or Assigns ("Deutsche Bank") is owed $5,113,348.70 as of March 8, 2011, plus an additional $865.03 per diem thereafter, and holds a valid perfected first lien on the Property. Deutsche Bank has provided evidence of its first lien position on the Property to the Trustee.

15.    Second mortgage holder, Wachovia National Association ("Wachovia") is owed $275,708.35 and holds a valid perfected second lien on the Property.  Wachovia has provided evidence of its second lien position on the Property to the Trustee.

16.    Dan DeRose ("DeRose") provided the Trustee with evidence that DeRose was the holder of a third mortgage lien on the Property.  However, since the inception of the case, the Trustee has asserted that the DeRose lien is avoidable as a post-petition lien on Shapiro's non-exempt real property and DeRose has agreed to release the DeRose lien and file a general unsecured claim.

17.    On November 11, 2009, less than three weeks prior to the Petition Date, Terrance Smith ("Smith") recorded in the Official Records of Miami-Dade County, Florida a Final Judgment Enforcing Settlement Agreement in the face amount of $4,050,833.37 (the "Smith Judgment").  Trustee believes any lien rights created by the recording of the Smith Judgment (the "Smith Judgment Lien") constitute an avoidable preference and if Smith does not agree to set aside the Smith Judgement Lien, the Trustee shall commence a preference action.

18.    At time of Closing, Buyer is required to pay the Purchase Price, in cleared funds.

4

CASE NO.: 09-36408-BKC-LMI

19.     At time of Closing, the Trustee shall pay from the Purchase Price proceeds the following claims secured by the Property (collectively, the "Secured Claims"): (i) the amounts owed to Deutsche Bank per above, (ii) the amounts owed to Wachovia per above, (iii) all amounts owed to the Miami-Dade County Tax Collector (the "Tax Collector") for unpaid *ad valorem* taxes and/or other past due assessments secured by the Property, and (iv) all amounts owed by the Estate pursuant to the Court's prior 11 U.S.C. § 364 Orders [*see* DE #'s 518 and 1018].

20.     Pursuant to the Sale Contract, at time of Closing the Trustee shall pay the following closing costs (collectively, the "Seller Closing Costs"):  (i) the Florida documentary stamp taxes payable on the deed, (ii) recording fees on any documents required to be recorded to clear title, (iii) Seller's prorated portion of 2011 real estate taxes, and (iv) the costs of any utility services provided to the Property prior to the date of Closing; and the Buyer shall be responsible for paying all other closing costs.

21.     Pursuant to the approved listing agreement entered into between the Trustee and One Southerby's Int'l Realty (the "Listing Broker") [DE 328], at time of Closing the Trustee shall pay Listing Broker a commission (to be shared with any cooperating brokers) in an amount equal to 50% of the net sale proceeds remaining after payment of the Secured Claims and the Seller Closing Costs.

22.     The Property is being sold "AS IS, WHERE IS," with no warranties of any type being given by the Trustee.

CASE NO.: 09-36408-BKC-LMI

23. The Trustee will serve copies of this Motion together with any notices as required by Rules 6004, 2002(a)(1) and 2002(a)(2) of the Federal Rules of Bankruptcy Procedure, and Local Rule 6004-1.

24. The Trustee seeks authority to close on the Sale Contract immediately upon entry of a Final Sale Order; and the Sale Contract obligates the Buyer to close thereunder within three (3) business days from the entry of a Final Sale Order.

25. The Buyer understands that until approved, the Sale is subject to higher and better offers. The Trustee and the Buyer have agreed, subject to Court approval, that in the event that the Buyer is not the successful purchaser, the Buyer shall be entitled to a reasonable breakup fee which the Trustee recommends to be set at $40,000.00.

**Legal Standard for Sale Free and Clear**

26. Section 363(b) of the Bankruptcy Code states: "The trustee, after notice and hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."

27. The Trustee believes that the liens securing the Secured Claims are the only valid liens on the Property. As per above, in connection with a Closing on the Sale, the liens securing the Secured Claims will attach to the proceeds of sale and be paid therefrom at time of Closing.

28. Accordingly, the Trustee requests that this Court approve Trustee's sale of the Property to the Buyer in accordance with the Sale Contract, free from liens, claims and encumbrances, pursuant to 11 U.S.C. § 363(b) and (f), subject to Trustee causing a Removal of the Smith Judgment Lien prior to the Sale Hearing.

TABAS, FREEDMAN, SOLOFF MILLER & BROWN, P.A. • One Flagler Building, 14 Northeast First Avenue, Penthouse, Miami, Florida 33132 • (305) 375-8171

CASE NO.: 09-36408-BKC-LMI

29.     Additionally, 11 U.S.C. § 363(f) permits the Trustee to:

... sell property under subsection (b)... of this section free and clear of any interest in such property of an entity other than the estate, only if –

(1)     applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2)     such entity consents;

(3)     such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4)     such interest is in *bona fide* dispute; or

(5)     such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

30.     The Trustee may sell the Property free and clear of liens and interests in such property, because applicable non-bankruptcy law permits the sale in accordance with §363(f)(1), because the creditors with competing interests therein have consented pursuant to §363(f)(2), because the claimed interests are subject to a *bona fide* dispute, in accordance with §363(f)(4), and because these creditors could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest, pursuant to §363(f)(5).

### Sound Business Purpose

31.     With respect to satisfying the elements of the "sound business purpose" test, the Trustee asserts that the Sale is the best available means to liquidate the Shapiro Estate's interests in the Property and realize benefit for the Shapiro Estate.  In addition, creditors and other parties in interest will receive accurate and reasonable notice of the terms of the Sale and proposed procedures through this Motion.

7

CASE NO.: 09-36408-BKC-LMI

### Good Faith Finding

32.    The Trustee submits that the Trustee and the Buyer have at all times acted in good faith, and therefore requests that this Court make a finding that the Buyer of the Sale is a good faith purchaser pursuant to 11 U.S.C. § 363(m).

**WHEREFORE**, Joel L. Tabas, as Chapter 7 Trustee of the Bankruptcy Estates of Capitol Investments USA, Inc. and Nevin Karey Shapiro, respectfully requests this Honorable Court enter an Order granting the instant Motion, scheduling a final sale hearing, and granting such other and further relief as this Court deems just and proper.

### <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished this 8th day of April, 2011, as follows: via electronic transmission to all parties on the attached service list and via U.S. Mail to all parties on the attached service list.

Respectfully submitted,

/s/ Joel L. Tabas
Joel L. Tabas
Tabas, Freedman, Soloff, Miller & Brown, P.A.
Attorneys for Joel L. Tabas, Trustee
Florida Bar No. 516902
14 N.E. First Avenue, Penthouse
Miami, Florida 33132
Telephone:  (305) 375-8171
Facsimile:  (305) 381-7708
Jtabas@tabasfreedman.com

8

# "AS IS" Residential Contract For Sale And Purchase

**THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR**

 FloridaRealtors

1* **PARTIES:** _____ **NEVIN K. SHAPIRO** _____ ("Seller"),
2* and _____ **Rex Runzheimer and/or assignee** _____ ("Buyer"),
3  agree that Seller shall sell and Buyer shall buy the following described Real Property and Personal
4  Property (collectively "Property") pursuant to the terms and conditions of this AS IS Residential Contract For Sale
5  And Purchase and any riders and addenda ("Contract"):
6  **1. PROPERTY DESCRIPTION:**
7*   (a) Street address, city, zip: _____ **5380 N. Bay Rd. Miami Beach, FL 33140**
8*   (b) Property is located in: _____ County, Florida. Real Property Tax ID No: _____
9*   (c) Legal description of the Real Property: **LA GORCE GOLF SUB PB 14-43 LOT 8 BLK 14 LOT SIZE 79.250 X**
10*      **161 OR 21269-0587 0503 1 COC 23438-4211 05 2005 1**
11      together with all existing improvements and fixtures, including built-in appliances, built-in furnishings and
12      attached wall-to-wall carpeting and flooring ("Real Property") unless specifically excluded below.
13      (d) Personal Property: The following items owned by Seller and existing on the Property as of the date
14      of the initial offer are included in the purchase ("Personal Property"):  (i) range(s)/oven(s), dishwasher(s),
15      disposal, ceiling fan(s), intercom, light fixtures, rods, draperies and other window treatments, garage door
16      openers, and security gate and other access devices; and  (ii) those additional items checked below. If
17*     additional details are necessary, specify below.  **If left blank, the item below is not included:**

| | | | |
|---|---|---|---|
| ☒ Refrigerator(s) | ☒ Smoke detector(s) | ☒ Pool barrier/fence | ☒ Storage shed |
| ☒ Microwave oven | ☒ Security system | ☒ Pool equipment | ☒ TV antenna/satellite dish |
| ☒ Washer | ☒ Window/wall a/c | ☒ Pool heater | ☒ Water softener/purifier |
| ☒ Dryer | ☒ Generator | ☐ Spa or hot tub with heater | ☒ Storm shutters and |
| ☒ Stand-alone ice maker | | ☐ Above ground pool | panels |

18      The only other items of Personal Property included in this purchase, and any additional details regarding
19*     Personal Property, if necessary, are: **All furnishings currently at the house as seen at the showing,**
20*     **complete inventory list to be generated.**
21      Personal Property is included in the Purchase Price, has no contributory value, and shall be left for the Buyer.
22*     (e) The following items are excluded from the purchase: _____
23*     _____

24* **2. PURCHASE PRICE** (U.S. currency):..................................................................... $ __5,750,000.00__
25*      (a) Initial deposit to be held in escrow in the amount of (checks subject to COLLECTION) $ __100,000.00__
26      The initial deposit made payable and delivered to "Escrow Agent" named below
27*     **(CHECK ONE):** ☐ accompanies offer or ☒ is to be made upon acceptance (Effective Date)
28*            or ☐ is to be made within _____ (if blank, then 3) days after Effective Date
29*     Escrow Agent Information: Name: __Eric van der Vlugt, Esq./Clear Title Services__
30*     Address: **1111 Kane Concourse #209 Bay Hrbr, FL 33154** Phone:  **(305) 865-5718**
31*     E-mail: __Eric@ClearTitleServices.com__  Fax:  **(305) 865-5710**
32*     (b) Additional deposit to be delivered to Escrow Agent within _____ **20** (if blank, then 3)
33*     days after Effective Date.............................................................................................$ __475,000.00__
34      (All deposits paid or agreed to be paid, are collectively referred to as the "Deposit")
35*     (c) Financing: Express as a dollar amount or percentage ("Loan Amount") see Paragraph 8 ......... __0__
36*     (d) Other: _____ ......$ _____
37      (e) Balance to close (not including Buyer's closing costs, prepaids and prorations) by wire
38*     transfer or other COLLECTED funds.........................................................................$ __BALANCE__
39      **NOTE: For the definition of "COLLECTION" or "COLLECTED" see STANDARD S.**
40  **3. TIME FOR ACCEPTANCE OF OFFER AND COUNTER-OFFERS; EFFECTIVE DATE:**
41*      (a) If not signed by Buyer and Seller, and an executed copy delivered to all parties on or before __Feb 15, 2011__
42*      _____, this offer shall be deemed withdrawn and the Deposit, if any, will be returned to Buyer.
43      Unless otherwise stated, time for acceptance of any counter-offers shall be within 2 days after the day the
44      counter-offer is delivered.
45      (b) The effective date of this Contract will be the date when the last one of the Buyer and Seller has signed or
46      initialed this offer or final counter-offer ("Effective Date").
47  **4. CLOSING DATE:** Unless modified by other provisions of this Contract, the closing of this transaction shall occur
48      and the closing documents required to be furnished by each party pursuant to this Contract shall be delivered
49*     ("Closing") on __or before 45 days__ ("Closing Date"), at the time established by the Closing Agent.

Buyer's Initials __RAR__ _____ Page 1 of 10      Seller's Initials _____

FloridaRealtors/FloridaBar-ASIS-1   Rev. 6/10 © 2010 Florida Realtors® and The Florida Bar.  All rights reserved.

*3/13/11*



**EXHIBIT**

**COMPOSITE "A"**



50  5. **EXTENSION OF CLOSING DATE:**
51  (a) If Closing funds from Buyer's lender(s) are not available at time of Closing due to Truth in Lending Act (TILA)
52      notice requirements, Closing shall be extended for such period necessary to satisfy TILA notice requirements,
53      not to exceed 7 days.
54  (b) If extreme weather or other condition or event constituting "Force Majeure" (see STANDARD G) causes:
55      (i) disruption of utilities or other services essential for Closing, or (ii) Hazard, Wind, Flood or Homeowners'
56      insurance, to become unavailable prior to Closing, Closing will be extended a reasonable time up to 3 days
57      after restoration of utilities and other services essential to Closing, and availability of applicable Hazard, Wind,
58      Flood or Homeowners' insurance. If restoration of such utilities or services and availability of insurance has not
59*     occurred within _____ (if left blank, 14) days after Closing Date, then either party may terminate this
60      Contract by delivering written notice to the other party, and Buyer shall be refunded the Deposit, thereby
61      releasing Buyer and Seller from all further obligations under this Contract.
62  6. **OCCUPANCY AND POSSESSION:** Unless otherwise stated herein, Seller shall at Closing, have removed all
63      personal items and trash from the Property and shall deliver occupancy and possession, along with all keys,
64      garage door openers, access devices and codes, as applicable, to Buyer. If Property is intended to be rented or
65      occupied beyond Closing, the fact and terms thereof and the tenant(s) or occupants shall be disclosed pursuant
66      to STANDARD D. If occupancy is to be delivered before Closing, Buyer assumes all risks of loss to Property from
67      date of occupancy, shall be responsible and liable for maintenance from that date, and shall be deemed to have
68      accepted Property in its existing condition as of time of taking occupancy.
69* 7. **ASSIGNABILITY: (CHECK ONE)** Buyer ☐ may assign and thereby be released from any further liability
70*     under this Contract; ☒ may assign but not be released from liability under this Contract; or ☐ may not assign
71      this Contract.

72                                              **FINANCING**
73  8. **FINANCING:**
74* ☒(a) Buyer will pay cash or may obtain a loan for the purchase of the Property. There is no financing
75      contingency to Buyer's obligation to close.
76* ☐(b) This Contract is contingent upon Buyer obtaining a written loan commitment for a ☐ conventional ☐ FHA
77*     ☐ VA loan on the following terms within _____ (if blank, then 30) days after Effective Date ("Loan
78*     Commitment Date") for: (CHECK ONE): ☐ fixed, ☐ adjustable, ☐ fixed or adjustable rate loan in
79*     the principal amount of $ _____ or _____ % of the Purchase Price, at an initial interest rate
80*     not to exceed _____ % (if blank, then prevailing rate based upon Buyer's creditworthiness), and for a
81*     term of _____ years ("Financing").

82*     Buyer will make mortgage loan application for the Financing within _____ (if blank, then 5) days after
83      Effective Date and use good faith and diligent effort to obtain a written loan commitment for the Financing
84      ("Loan Commitment") and close this Contract. Buyer shall keep Seller and Broker fully informed about
85      the status of mortgage loan application and Loan Commitment and authorizes Buyer's mortgage broker and
86      Buyer's lender to disclose such status and progress to Seller and Broker.

87      If Buyer does not receive Loan Commitment, then Buyer may terminate this Contract by delivering written
88      notice to Seller, and the Deposit shall be refunded to Buyer, thereby releasing Buyer and Seller from all
89      further obligations under this Contract.

90      If Buyer does not deliver written notice to Seller of receipt of Loan Commitment or Buyer's written waiver of
91      this financing contingency, then after Loan Commitment Date Seller may terminate this Contract by
92      delivering written notice to Buyer and the Deposit shall be refunded to Buyer, thereby releasing Buyer and
93      Seller from all further obligations under this Contract.

94      If Buyer delivers written notice of receipt of Loan Commitment to Seller and this Contract does not
95      thereafter close, the Deposit shall be paid to Seller unless failure to close is due to: (1) Seller's default;
96      (2) Property related conditions of the Loan Commitment have not been met (except when such conditions
97      are waived by other provisions of this Contract); (3) appraisal of the Property obtained by Buyer's lender is
98      insufficient to meet terms of the Loan Commitment; or (4) the loan is not funded due to financial failure of
99      Buyer's lender, in which event(s) the Deposit shall be returned to Buyer, thereby releasing Buyer and Seller
100     from all further obligations under this Contract.
101* ☐(c) Assumption of existing mortgage (see rider for terms).
102* ☐(d) Purchase money note and mortgage to Seller (see riders; addenda; or special clauses for terms).

Buyer's Initials _RAR_ _____          Page 2 of 10          Seller's Initials _AV_ _____
FloridaRealtors/FloridaBar-ASIS-1  Rev. 6/10 © 2010 Florida Realtors® and The Florida Bar. All rights reserved.

                                                                            p 2 8

## CLOSING COSTS, FEES AND CHARGES

9. **CLOSING COSTS; TITLE INSURANCE; SURVEY; HOME WARRANTY; SPECIAL ASSESSMENTS:**

(a) **COSTS TO BE PAID BY SELLER:**
- Documentary stamp taxes and surtax on deed, if any
- Owner's Policy and Charges (if Paragraph 9(c)(i) is checked)
- Title search charges (if Paragraph 9(c)(iii) is checked)
- Other: _____
- HOA/Condominium Association estoppel fees
- Recording and other fees needed to cure title
- Seller's attorneys' fees

If, prior to Closing, Seller is unable to meet the AS IS Maintenance Requirement as required by Paragraph 11 a sum equal to 125% of estimated cost to meet the AS IS Maintenance Requirement shall be escrowed at Closing. If actual costs to meet the AS IS Maintenance Requirement exceed escrowed amount, Seller shall pay such actual costs. Any unused portion of escrowed amount shall be returned to Seller.

(b) **COSTS TO BE PAID BY BUYER:**
- Taxes and recording fees on notes and mortgages
- Recording fees for deed and financing statements
- Owner's Policy and Charges (if Paragraph 9(c)(ii) is checked)
- Survey (and elevation certification, if required)
- Lender's title policy and endorsements
- HOA/Condominium Association application/transfer fees
- Other: _____
- Loan expenses
- Appraisal fees
- Buyer's Inspections
- Buyer's attorneys' fees
- All property related Insurance

(c) **TITLE EVIDENCE AND INSURANCE:** At least _____ (if blank, then 5) days prior to Closing Date, a title insurance commitment issued by a Florida licensed title insurer, with legible copies of instruments listed as exceptions attached thereto ("Title Commitment") and, after Closing, an owner's policy of title insurance (see STANDARD A for terms) shall be obtained and delivered to Buyer. If Seller has an owner's policy of title insurance covering the Real Property, a copy shall be furnished to Buyer and Closing Agent within 5 days after Effective Date. The owner's title policy premium and charges for owner's policy endorsements, title search, and closing services (collectively, "Owner's Policy and Charges") shall be paid, as set forth below (CHECK ONE):

☐ (i) Seller will designate Closing Agent and pay for Owner's Policy and Charges (but not including charges for closing services related to Buyer's lender's policy and endorsements and loan closing, which amounts shall be paid by Buyer to Closing Agent or such other provider(s) as Buyer may select); or

☒ (ii) Buyer will designate Closing Agent and pay for Owner's Policy and Charges and charges for closing services related to Buyer's lender's policy, endorsements, and loan closing; or

☐ (iii) [MIAMI-DADE/BROWARD REGIONAL PROVISION]: Seller will furnish a copy of a prior owner's policy of title insurance or other evidence of title and pay fees for: (A) a continuation or update of such title evidence, which is acceptable to Buyer's title insurance underwriter for reissue of coverage; (B) tax search; and (C) municipal lien search. Buyer shall obtain and pay for post-Closing continuation and premium for Buyer's owner's policy, and if applicable, Buyer's lender's policy. Seller shall not be obligated to pay more than $ _____ (if blank, $200.00) for abstract continuation or title search ordered or performed by Closing Agent.

(d) **SURVEY:** At least 5 days prior to Closing, Buyer may, at Buyer's expense, have the Real Property surveyed and certified by a registered Florida surveyor ("Survey"). If Seller has a survey covering the Real Property, a copy shall be furnished to Buyer and Closing Agent within 5 days after Effective Date.

(e) **HOME WARRANTY:** At Closing, ☐ Buyer ☐ Seller ☒ N/A will pay for a home warranty plan issued by _____ at a cost not to exceed $_____. A home warranty plan provides for repair or replacement of many of a home's mechanical systems and major built-in appliances in the event of breakdown due to normal wear and tear during the agreement's warranty period.

(f) **SPECIAL ASSESSMENTS:** At Closing, Seller will pay: (i) the full amount of liens imposed by a public body ("public body" does not include a Condominium or Homeowner's Association) that are certified, confirmed and ratified before Closing; and (ii) the amount of the public body's most recent estimate or assessment for an improvement which is substantially complete as of Effective Date, but that has not resulted in a lien being imposed on the Property before Closing. Buyer will pay all other assessments. If special assessments may be paid in installments (CHECK ONE):

☐ (a) Seller shall pay installments due prior to Closing and Buyer shall pay installments due after Closing. Installments prepaid or due for the year of Closing shall be prorated.

☒ (b) Seller shall pay the assessment(s) in full prior to or at the time of Closing.

IF NEITHER BOX IS CHECKED, THEN OPTION (a) SHALL BE DEEMED SELECTED.

This Paragraph 9(f) shall not apply to a special benefit tax lien imposed by a community development district (CDD) pursuant to Chapter 190 F.S. which lien shall be treated as an ad valorem tax and prorated pursuant to STANDARD K.

Buyer's Initials  _RAR_ _____    Page 3 of 10    Seller's Initials  _____ _____

FloridaRealtors/FloridaBar-ASIS-1   Rev. 6/10 © 2010 Florida Realtors® and The Florida Bar. All rights reserved.

DISCLOSURES

**10. DISCLOSURES:**

(a) **RADON GAS:** Radon is a naturally occurring radioactive gas that, when it is accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county health department.

(b) **PERMITS DISCLOSURE: Except as may have been disclosed by Seller to Buyer in a written disclosure, Seller does not know of any improvements made to the Property which were made without required permits or made pursuant to permits which have not been properly closed.**

(c) **MOLD:** Mold is naturally occurring and may cause health risks or damage to property. If Buyer is concerned or desires additional information regarding mold, Buyer should contact an appropriate professional.

(d) **FLOOD ZONE; ELEVATION CERTIFICATION:** Buyer is advised to verify by elevation certificate which flood zone the Property is in, whether flood insurance is required by Buyer's lender, and what restrictions apply to improving the Property and rebuilding in the event of casualty. If Property is in a "Special Flood Hazard Area" or "Coastal High Hazard Area" and finished floor elevation is below minimum flood elevation, Buyer may terminate this Contract by delivering written notice to Seller within 20 days after Effective Date, failing which Buyer accepts existing elevation of buildings and flood zone designation of Property.

(e) **ENERGY BROCHURE:** Buyer acknowledges receipt of Florida Energy-Efficiency Rating Information Brochure required by Section 553.996, F.S.

(f) **LEAD-BASED PAINT:** If Property includes pre-1978 residential housing, a lead-based paint rider is mandatory.

(g) **HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE: BUYER SHOULD NOT EXECUTE THIS CONTRACT UNTIL BUYER HAS RECEIVED AND READ THE HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE, IF APPLICABLE.**

(h) **PROPERTY TAX DISCLOSURE SUMMARY:** BUYER SHOULD NOT RELY ON THE SELLER'S CURRENT PROPERTY TAXES AS THE AMOUNT OF PROPERTY TAXES THAT THE BUYER MAY BE OBLIGATED TO PAY IN THE YEAR SUBSEQUENT TO PURCHASE. A CHANGE OF OWNERSHIP OR PROPERTY IMPROVEMENTS TRIGGERS REASSESSMENTS OF THE PROPERTY THAT COULD RESULT IN HIGHER PROPERTY TAXES. IF YOU HAVE ANY QUESTIONS CONCERNING VALUATION, CONTACT THE COUNTY PROPERTY APPRAISER'S OFFICE FOR INFORMATION.

(i) **TAX WITHHOLDING:** If Seller is a "foreign person" as defined by the Foreign Investment in Real Property Tax Act ("FIRPTA"), Buyer and Seller will comply with FIRPTA, which may require Seller to provide additional cash at Closing.

(j) **SELLER DISCLOSURE:** Seller knows of no facts materially affecting the value of the Real Property which are not readily observable and which have not been disclosed to Buyer. Except as stated in the preceding sentence or otherwise disclosed in writing: (1) Seller has received no written or verbal notice from any governmental entity or agency as to a currently uncorrected building, environmental or safety code violation; and (2) Seller extends and intends no warranty and makes no representation of any type, either express or implied, as to the physical condition or history of the Property.

PROPERTY MAINTENANCE, CONDITION, INSPECTIONS AND EXAMINATIONS

**11. PROPERTY MAINTENANCE:** Except for ordinary wear and tear and Casualty Loss, Seller shall maintain the Property, including, but not limited to, lawn, shrubbery, and pool, in the condition existing as of Effective Date ("AS IS Maintenance Requirement").

**12. PROPERTY INSPECTION; RIGHT TO CANCEL:**

(a) *PROPERTY INSPECTIONS AND RIGHT TO CANCEL: Buyer shall have* _____ **20** *(if blank, 15) days from Effective Date ("Inspection Period") within which to have such inspections of the Property performed as Buyer shall desire during the Inspection Period. If Buyer determines, in Buyer's sole discretion, that the Property is not acceptable to Buyer, Buyer may terminate this Contract by delivering written notice of such election to Seller prior to expiration of Inspection Period. If Buyer timely terminates this Contract, the Deposit paid shall be immediately returned to Buyer, thereupon, Buyer and Seller shall be released of all further obligations under this Contract; however, Buyer shall be responsible for prompt payment for such inspections, for repair of damage to, and restoration of, the Property resulting from such inspections, and shall provide Seller with paid receipts for all work done on the Property (the preceding provision shall survive termination of this Contract). Unless Buyer exercises the right to terminate granted herein, Buyer accepts the physical condition of the Property and any violation of governmental, building, environmental, and safety codes, restrictions, or requirements, but subject to Seller's continuing AS IS Maintenance Requirement, and Buyer shall be responsible for any and all repairs and improvements required by Buyer's lender.*

Buyer's Initials _RAR_ _____    Page 4 of 10    Seller's Initials  _____

3/13/11

FloridaRealtors/FloridaBar-ASIS-1   Rev. 6/10 © 2010 Florida Realtors® and The Florida Bar.  All rights reserved.

(b) **WALK-THROUGH INSPECTION/RE-INSPECTION:** On the day prior to Closing Date, or on Closing Date prior to time of Closing, as specified by Buyer, Buyer or Buyer's representative may perform a walk-through (and follow-up walk-through, if necessary) inspection of the Property solely to confirm that all items of Personal Property are on the Property and to verify that Seller has maintained the Property as required by the AS IS Maintenance Requirement and has met all other contractual obligations.

(c) **SELLER ASSISTANCE AND COOPERATION IN CLOSE-OUT OF BUILDING PERMITS:** If Buyer's inspection of the Property identifies open or needed building permits, then Seller shall promptly deliver to Buyer all plans, written documentation or other information in Seller's possession, knowledge, or control relating to improvements to the Property which are the subject of such open or needed Permits, and shall promptly cooperate in good faith with Buyer's efforts to obtain estimates of repairs or other work necessary to resolve such Permit issues. Seller's obligation to cooperate shall include Seller's execution of necessary authorizations, consents, or other documents necessary for Buyer to conduct inspections and have estimates of such repairs or work prepared, but in fulfilling such obligation, Seller shall not be required to expend, or become obligated to expend, any money.

(d) **ASSIGNMENT OF REPAIR AND TREATMENT CONTRACTS AND WARRANTIES:** At Buyer's option and cost, Seller will, at Closing, assign all assignable repair, treatment and maintenance contracts and warranties to Buyer.

### ESCROW AGENT AND BROKER

13. **ESCROW AGENT:** Any Closing Agent or Escrow Agent (collectively "Agent") receiving the Deposit, other funds and other items is authorized, and agrees by acceptance of them, to deposit them promptly, hold same in escrow within the State of Florida and, subject to **COLLECTION**, disburse them in accordance with terms and conditions of this Contract. Failure of funds to become **COLLECTED** shall not excuse Buyer's performance. When conflicting demands for the Deposit are received, or Agent has a good faith doubt as to entitlement to the Deposit, Agent may take such actions permitted by this Paragraph 13, as Agent deems advisable. If in doubt as to Agent's duties or liabilities under this Contract, Agent may, at Agent's option, continue to hold the subject matter of the escrow until the parties agree to its disbursement or until a final judgment of a court of competent jurisdiction shall determine the rights of the parties, or Agent may deposit same with the clerk of the circuit court having jurisdiction of the dispute. An attorney who represents a party and also acts as Agent may represent such party in such action. Upon notifying all parties concerned of such action, all liability on the part of Agent shall fully terminate, except to the extent of accounting for any items previously delivered out of escrow. If a licensed real estate broker, Agent will comply with provisions of Chapter 475, F.S., as amended and FREC rules to timely resolve escrow disputes through mediation, arbitration, interpleader or an escrow disbursement order. Any proceeding between Buyer and Seller wherein Agent is made a party because of acting as Agent hereunder, or in any proceeding where Agent interpleads the subject matter of the escrow, Agent shall recover reasonable attorney's fees and costs incurred, to be paid pursuant to court order out of the escrowed funds or equivalent. Agent shall not be liable to any party or person for mis-delivery of any escrowed items, unless such mis-delivery is due to Agent's willful breach of this Contract or Agent's gross negligence. This Paragraph 13 shall survive Closing or termination of this Contract.

14. **PROFESSIONAL ADVICE; BROKER LIABILITY:** Broker advises Buyer and Seller to verify Property condition, square footage, and all other facts and representations made pursuant to this Contract and to consult appropriate professionals for legal, tax, environmental, and other specialized advice concerning matters affecting the Property and the transaction contemplated by this Contract. Broker represents to Buyer that Broker does not reside on the Property and that all representations (oral, written or otherwise) by Broker are based on Seller representations or public records. **BUYER AGREES TO RELY SOLELY ON SELLER, PROFESSIONAL INSPECTORS AND GOVERNMENTAL AGENCIES FOR VERIFICATION OF PROPERTY CONDITION, SQUARE FOOTAGE AND FACTS THAT MATERIALLY AFFECT PROPERTY VALUE AND NOT ON THE REPRESENTATIONS (ORAL, WRITTEN OR OTHERWISE) OF BROKER.** Buyer and Seller (individually, the "Indemnifying Party") each individually indemnifies, holds harmless, and releases Broker and Broker's officers, directors, agents and employees from all liability for loss or damage, including all costs and expenses, and reasonable attorney's fees at all levels, suffered or incurred by Broker and Broker's officers, directors, agents and employees in connection with or arising from claims, demands or causes of action instituted by Buyer or Seller based on: (i) inaccuracy of information provided by the Indemnifying Party or from public records; (ii) Indemnifying Party's misstatement(s) or failure to perform contractual obligations; (iii) Broker's performance, at Indemnifying Party's request, of any task beyond the scope of services regulated by Chapter 475, F.S., as amended, including Broker's referral, recommendation or retention of any vendor for, or on behalf of, Indemnifying Party; (iv) products or services provided by any such vendor for, or on behalf of, Indemnifying Party; and (v) expenses incurred by any such vendor. Buyer and Seller each assumes full responsibility for selecting and compensating their respective vendors and paying their other costs under this Contract whether or not this transaction closes. This Paragraph 14 will not relieve Broker of statutory obligations under Chapter 475, F.S., as amended. For purposes of this Paragraph 14,

288  Broker will be treated as a party to this Contract. This Paragraph 14 shall survive Closing or termination of this
289  Contract.

## DEFAULT AND DISPUTE RESOLUTION

271  **15. DEFAULT:**
272      (a) **BUYER DEFAULT:** If Buyer fails, neglects or refuses to perform Buyer's obligations under this Contract,
273      including payment of the Deposit, within the time(s) specified, Seller may elect to recover and retain the
274      Deposit for the account of Seller as agreed upon liquidated damages, consideration for execution of this
275      Contract, and in full settlement of any claims, whereupon Buyer and Seller shall be relieved from all further
276      obligations under this Contract, or Seller, at Seller's option, may, pursuant to Paragraph 16, proceed in equity
277      to enforce Seller's rights under this Contract. The portion of the Deposit, if any, paid to Listing Broker upon
278      default by Buyer, shall be split equally between Listing Broker and Cooperating Broker; provided however,
279      Cooperating Broker's share shall not be greater than the commission amount Listing Broker had agreed to pay
280      to Cooperating Broker.
281      (b) **SELLER DEFAULT:** If for any reason other than failure of Seller to make Seller's title marketable after
282      reasonable diligent effort, Seller fails, neglects or refuses to perform Seller's obligations under this Contract,
283      Buyer may elect to receive return of Buyer's Deposit without thereby waiving any action for damages resulting
284      from Seller's breach, and, pursuant to Paragraph 16, may seek to recover such damages or seek specific
285      performance. This Paragraph 15 shall survive Closing or termination of this Contract.
286  **16. DISPUTE RESOLUTION:** Unresolved controversies, claims and other matters in question between Buyer and
287      Seller arising out of, or relating to, this Contract or its breach, enforcement or interpretation ("Dispute") will be
288      settled as follows:
289      (a) Buyer and Seller will have 10 days after the date conflicting demands for the Deposit are made to attempt to
290      resolve such Dispute, failing which, Buyer and Seller shall submit such Dispute to mediation under
291      Paragraph 16(b).
292      (b) Buyer and Seller shall attempt to settle Disputes in an amicable manner through mediation pursuant to Florida
293      Rules for Certified and Court-Appointed Mediators and Chapter 44, F.S., as amended (the "Mediation Rules").
294      The mediator must be certified or must have experience in the real estate industry. Injunctive relief may be
295      sought without first complying with this Paragraph 16(b). Disputes not settled pursuant to this Paragraph 16
296      may be resolved by instituting action in the appropriate court having jurisdiction of the matter. This Paragraph 16
297      shall survive Closing or termination of this Contract.
298  **17. ATTORNEY'S FEES; COSTS:** The parties will split equally any mediation fee incurred in any mediation permitted
299      by this Contract, and each party will pay their own costs, expenses and fees, including attorney's fees, incurred in
300      conducting the mediation. In any litigation permitted by this Contract, the prevailing party shall be entitled to
301      recover from the non-prevailing party costs and fees, including reasonable attorney's fees, incurred in conducting
302      the litigation. This Paragraph 17 shall survive Closing or termination of this Contract.

## STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS")

304  **18. STANDARDS:**
305  **A. TITLE:**
306      (i) **TITLE EVIDENCE; RESTRICTIONS; EASEMENTS; LIMITATIONS:** Within the time period provided in
307      Paragraph 9(c), the Title Commitment, with legible copies of instruments listed as exceptions attached thereto, shall
308      be issued and delivered to Buyer. The Title Commitment shall set forth those matters to be discharged by Seller at or
309      before Closing and shall provide that, upon recording of the deed to Buyer, an owner's policy of title insurance in the
310      amount of the Purchase Price, shall be issued to Buyer insuring Buyer's marketable title to the Real Property,
311      subject only to the following matters: (a) comprehensive land use plans, zoning, and other land use restrictions,
312      prohibitions and requirements imposed by governmental authority; (b) restrictions and matters appearing on the Plat
313      or otherwise common to the subdivision; (c) outstanding oil, gas and mineral rights of record without right of entry;
314      (d) unplatted public utility easements of record (located contiguous to real property lines and not more than 10 feet in
315      width as to rear or front lines and 7 1/2 feet in width as to side lines); (e) taxes for year of Closing and subsequent
316      years; and (f) assumed mortgages and purchase money mortgages, if any (if additional items, attach addendum);
317      provided, that none prevent use of the Property for RESIDENTIAL PURPOSES. If there exists at Closing any
318      violation of items identified in (b) - (f) above, then the same shall be deemed a title defect. Marketable title shall be
319      determined according to applicable Title Standards adopted by authority of The Florida Bar and in accordance with
320      law.
321      (ii) **TITLE EXAMINATION:** Buyer shall have 5 days after receipt of Title Commitment to examine it and notify
322      Seller in writing specifying defect(s), if any, that render title unmarketable. If Seller provides Title Commitment and it
323      is delivered to Buyer less than 5 days prior to Closing Date, Buyer may extend Closing for up to 5 days after
324      date of receipt to examine same in accordance with this STANDARD A. Seller shall have 30 days ("Cure Period")
325      after receipt of Buyer's notice to take reasonable diligent efforts to remove defects. If Buyer fails to so notify Seller,
326      Buyer shall be deemed to have accepted title as it then is. If Seller cures defects within Cure Period, Seller will

Buyer's Initials _RAR_          Page 6 of 10       Seller's Initials _QM_

FloridaRealtors/FloridaBar-ASIS-1  Rev. 6/10 © 2010 Florida Realtors® and The Florida Bar. All rights reserved.

### STANDARDS FOR REAL ESTATE TRANSACTIONS (CONTINUED)

327 deliver written notice to Buyer (with proof of cure acceptable to Buyer and Buyer's attorney) and the parties will
328 close this Contract on Closing Date (or if Closing Date has passed, within 10 days after Buyer's receipt of Seller's
329 notice). If Seller is unable to cure defects within Cure Period, then Buyer may, within 5 days after expiration of
330 Cure Period, deliver written notice to Seller: (a) extending Cure Period for a specified period not to exceed 120 days
331 within which Seller shall continue to use reasonable diligent effort to remove or cure the defects ("Extended Cure
332 Period"); or (b) electing to accept title with existing defects and close this Contract on Closing Date (or if Closing Date
333 has passed, within the earlier of 10 days after end of Extended Cure Period or Buyer's receipt of Seller's notice), or
334 (c) electing to terminate this Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from
335 all further obligations under this Contract. If after reasonable diligent effort, Seller is unable to timely cure defects,
336 and Buyer does not waive the defects, this Contract shall terminate, and Buyer shall receive a refund of the Deposit,
337 thereby releasing Buyer and Seller from all further obligations under this Contract.
338 **B.  SURVEY:** If Survey discloses encroachments on the Real Property or that improvements located thereon
339 encroach on setback lines, easements, or lands of others; or violate any restrictions, covenants, or applicable
340 governmental regulations described in STANDARD A (i)(a), (b) or (d) above, Buyer shall deliver written notice of such
341 matters, together with a copy of Survey, to Seller within 5 days after Buyer's receipt of Survey, but no later than
342 Closing. If Buyer timely delivers such notice and Survey to Seller, such matters identified in the notice and Survey
343 shall constitute a title defect, subject to cure obligations of STANDARD A above. If Seller has delivered a prior
344 survey, Seller shall, at Buyer's request, execute an affidavit of "no change" to the Real Property since the
345 preparation of such prior survey, to the extent the affirmations therein are true and correct.
346 **C.  INGRESS AND EGRESS:** Seller represents that there is ingress and egress to the Real Property and title to
347 the Real Property is insurable in accordance with STANDARD A without exception for lack of legal right of access.
348 **D.  LEASES:** Seller shall, within 5 days after Inspection Period, furnish to Buyer copies of all written leases and
349 estoppel letters from each tenant specifying nature and duration of tenant's occupancy, rental rates, advanced rent
350 and security deposits paid by tenant, and income and expense statements for preceding 12 months ("Lease
351 Information"). If Seller is unable to obtain estoppel letters from tenant(s), the same information shall be furnished by
352 Seller to Buyer within that time period in the form of a Seller's affidavit, and Buyer may thereafter contact tenant(s)
353 to confirm such information. If terms of the lease(s) differ materially from Seller's representations, Buyer may deliver
354 written notice to Seller within 5 days after receipt of Lease Information, but no later than 5 days prior to Closing
355 Date, terminating this Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all
356 further obligations under this Contract. Seller shall, at Closing, deliver and assign all original leases to Buyer who
357 shall assume Seller's obligation thereunder.
358 **E.  LIENS:** Seller shall furnish to Buyer at Closing an affidavit attesting: (i) to the absence of any financing
359 statement, claims of lien or potential lienors known to Seller, and (ii) that there have been no improvements or repairs
360 to the Real Property for 90 days immediately preceding Closing Date. If the Real Property has been improved or
361 repaired within that time, Seller shall deliver releases or waivers of construction liens executed by all general
362 contractors, subcontractors, suppliers and materialmen in addition to Seller's lien affidavit setting forth names of all
363 such general contractors, subcontractors, suppliers and materialmen, further affirming that all charges for
364 improvements or repairs which could serve as a basis for a construction lien or a claim for damages have been paid
365 or will be paid at Closing.
366 **F.  TIME:** Calendar days shall be used in computing time periods. Any time periods provided for in this Contract
367 which shall end on a Saturday, Sunday, or a national legal holiday (see 5 U.S.C. 6103) shall extend to 5:00 p.m.
368 (where the Property is located) of the next business day. Time is of the essence in this Contract.
369 **G.  FORCE MAJEURE:** Buyer or Seller shall not be required to perform any obligation under this Contract or be
370 liable to each other for damages so long as performance or non-performance of the obligation is delayed, caused or
371 prevented by Force Majeure. "Force Majeure" means: hurricanes, earthquakes, floods, fire, acts of God, unusual
372 transportation delays, wars, insurrections, acts of terrorism, and any other cause not reasonably within control of
373 Buyer or Seller, and which, by exercise of reasonable diligent effort, the non-performing party is unable in whole or in
374 part to prevent or overcome. All time periods, including Closing Date, will be extended for the period that the Force
375 Majeure prevents performance under this Contract, provided, however, if such Force Majeure continues to prevent
376 performance under this Contract more than 14 days beyond Closing Date, then either party may terminate this
377 Contract by delivering written notice to the other and the Deposit shall be refunded to Buyer, thereby releasing Buyer
378 and Seller from all further obligations under this Contract.
379 **H.  CONVEYANCE:** Seller shall convey marketable title to the Real Property by statutory warranty, trustee's,
380 personal representative's, or guardian's deed, as appropriate to the status of Seller, subject only to matters described
381 in STANDARD A and those accepted by Buyer. Personal Property shall, at request of Buyer, be transferred by
382 absolute bill of sale with warranty of title, subject only to such matters as may be provided for in this Contract.
383 **I.  CLOSING LOCATION; DOCUMENTS; AND PROCEDURE:**
384 **(i) LOCATION:** Closing will take place in the county where the Real Property is located at the office of the
385 attorney or other closing agent ("Closing Agent") designated by the party paying for the owner's policy of title

Buyer's Initials _RAR_                                Page 7 of 10                        Seller's Initials _GN_
FloridaRealtors/FloridaBar-ASIS-1  Rev. 6/10 © 2010 Florida Realtors® and The Florida Bar. All rights reserved.

### STANDARDS FOR REAL ESTATE TRANSACTIONS (CONTINUED)

387  insurance, or, if no title insurance, designated by Seller. Closing may be conducted by mail or electronic means.

389  **(ii) CLOSING DOCUMENTS:** At Closing, Seller shall furnish and pay for, as applicable, deed, bill of sale,
390  certificate of title, construction lien affidavit, owner's possession affidavit, assignments of leases, and corrective
391  instruments. Seller shall provide Buyer with paid receipts for all work done on the Property pursuant to this Contract.
392  Buyer shall furnish and pay for, as applicable, mortgage, mortgage note, security agreement, financing statements,
393  survey, base elevation certification, and other documents required by Buyer's lender.

394  **(iii) PROCEDURE:** The deed shall be recorded upon COLLECTION of all closing funds. If the Title
395  Commitment provides insurance against adverse matters pursuant to Section 627.7841, F.S., as amended, the
396  escrow closing procedure required by STANDARD J shall be waived, and Closing Agent shall, subject to
397  COLLECTION of all closing funds, disburse at Closing the brokerage fees to Broker and the net sale proceeds to
398  Seller.

399  **J. ESCROW CLOSING PROCEDURE:** If Title Commitment issued pursuant to Paragraph 9(c) does not provide
400  for insurance against adverse matters as permitted under Section 627.7841, F.S., as amended, the following escrow
401  and closing procedures shall apply: (1) all Closing proceeds shall be held in escrow by the Closing Agent for a period
402  of not more than 10 days after Closing; (2) if Seller's title is rendered unmarketable, through no fault of Buyer, Buyer
403  shall, within the 10 day period, notify Seller in writing of the defect and Seller shall have 30 days from date of receipt
404  of such notification to cure the defect; (3) if Seller fails to timely cure the defect, the Deposit and all Closing funds
405  paid by Buyer shall, within 5 days after written demand by Buyer, be refunded to Buyer and, simultaneously with
406  such repayment, Buyer shall return the Personal Property, vacate the Real Property and re-convey the Property to
407  Seller by special warranty deed and bill of sale; and (4) if Buyer fails to make timely demand for refund of the
408  Deposit, Buyer shall take title as is, waiving all rights against Seller as to any intervening defect except as may be
409  available to Buyer by virtue of warranties contained in the deed or bill of sale.

410  **K. PRORATIONS; CREDITS:** The following recurring items will be made current (if applicable) and prorated as of
411  the day prior to Closing Date, or date of occupancy if occupancy occurs before Closing Date: real estate taxes
412  (including special benefit tax assessments imposed by a CDD), interest, bonds, association fees, insurance, rents
413  and other expenses of Property. Buyer shall have option of taking over existing policies of insurance, if assumable, in
414  which event premiums shall be prorated. Cash at Closing shall be increased or decreased as may be required by
415  prorations to be made through day prior to Closing. Advance rent and security deposits, if any, will be credited to
416  Buyer. Escrow deposits held by Seller's mortgagee will be paid to Seller. Taxes shall be prorated based on current
417  year's tax with due allowance made for maximum allowable discount, homestead and other exemptions. If Closing
418  occurs on a date when current year's millage is not fixed but current year's assessment is available, taxes will be
419  prorated based upon such assessment and prior year's millage. If current year's assessment is not available, then
420  taxes will be prorated on prior year's tax. If there are completed improvements on the Real Property by January 1st of
421  year of Closing, which improvements were not in existence on January 1st of prior year, then taxes shall be prorated
422  based upon prior year's millage and at an equitable assessment to be agreed upon between the parties, failing which,
423  request shall be made to the County Property Appraiser for an informal assessment taking into account available
424  exemptions. A tax proration based on an estimate shall, at either party's request, be readjusted upon receipt of
425  current year's tax bill. This STANDARD K shall survive Closing.

426  **L. ACCESS TO PROPERTY TO CONDUCT APPRAISALS, INSPECTIONS, AND WALK-THROUGH:** Seller
427  shall, upon reasonable notice, provide utilities service and access to Property for appraisals and inspections,
428  including a walk-through (or follow-up walk-through if necessary) prior to Closing.

429  **M. RISK OF LOSS:** If, after Effective Date, but before Closing, Property is damaged by fire or other casualty
430  ("Casualty Loss") and cost of restoration (which shall include cost of pruning or removing damaged trees) does not
431  exceed 1.5% of Purchase Price, cost of restoration shall be an obligation of Seller and Closing shall proceed
432  pursuant to terms of this Contract. If restoration is not completed as of Closing, a sum equal to 125% of estimated
433  cost to complete restoration (not to exceed 1.5% of Purchase Price), will be escrowed at Closing. If actual cost of
434  restoration exceeds escrowed amount, Seller shall pay such actual costs (but, not in excess of 1.5% of Purchase
435  Price). Any unused portion of escrowed amount shall be returned to Seller. If cost of restoration exceeds 1.5% of
436  Purchase Price, Buyer shall elect to either take Property "as is" together with the 1.5%, or receive a refund of the
437  Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract. Seller's sole obligation
438  with respect to tree damage by casualty or other natural occurrence shall be cost of pruning or removal.

439  **N. 1031 EXCHANGE:** If either Seller or Buyer wish to enter into a like-kind exchange (either simultaneous with
440  Closing or deferred) under Section 1031 of the Internal Revenue Code ("Exchange"), the other party shall cooperate
441  in all reasonable respects to effectuate the Exchange, including execution of documents; provided, however,
442  cooperating party shall incur no liability or expense related to the Exchange, and Closing shall not be contingent
443  upon, nor extended or delayed by, such Exchange.

444  **O. CONTRACT NOT RECORDABLE; PERSONS BOUND; NOTICE; COPIES:** Neither this Contract nor any
445  notice of it shall be recorded in any public records. This Contract shall be binding on, and inure to the benefit of, the
446  parties and their respective heirs or successors in interest. Whenever the context permits, singular shall include plural

p 4 m

447          STANDARDS FOR REAL ESTATE TRANSACTIONS (CONTINUED)
448 and one gender shall include all. Notice and delivery given by or to the attorney or broker (including such broker's real
449 estate licensee) representing any party shall be as effective as if given by or to that party. All notices must be in
450 writing and may be made by mail, personal delivery or electronic (including "pdf") media. A legible facsimile or
451 electronic (including "pdf") copy of this Contract and any signatures hereon shall be considered for all purposes as an
452 original.
453 **P. INTEGRATION; MODIFICATION:** This Contract contains the full and complete understanding and agreement
454 of Buyer and Seller with respect to the transaction contemplated by this Contract and no prior agreements or
455 representations shall be binding upon Buyer or Seller unless included in this Contract. No modification to or change
456 in this Contract shall be valid or binding upon Buyer or Seller unless in writing and executed by the parties intended
457 to be bound by it.
458 **Q. WAIVER:** Failure of Buyer or Seller to insist on compliance with, or strict performance of, any provision of this
459 Contract, or to take advantage of any right under this Contract, shall not constitute a waiver of other provisions or
460 rights.
461 **R. RIDERS; ADDENDA; TYPEWRITTEN OR HANDWRITTEN PROVISIONS:** Riders, addenda, and typewritten
462 or handwritten provisions shall control all printed provisions of this Contract in conflict with them.
463 **S. COLLECTION or COLLECTED:** "COLLECTION" or "COLLECTED" means any checks tendered or received,
464 including Deposits, have become actually and finally collected and deposited in the account of Escrow Agent
465 or Closing Agent. Closing and disbursement of funds and delivery of Closing documents may be delayed by
466 Closing Agent until such amounts have been COLLECTED in Closing Agent's accounts.
467 **T. LOAN COMMITMENT:** "Loan Commitment" means a statement by the lender setting forth the terms and
468 conditions upon which the lender is willing to make a particular mortgage loan to a particular borrower.
469 **U. APPLICABLE LAW AND VENUE:** This Contract shall be construed in accordance with the laws of the State of
470 Florida and venue for resolution of all disputes, whether by mediation, arbitration or litigation, shall lie in the county in
471 which the Real Property is located.
472 **X. BUYER WAIVER OF CLAIMS:** *Buyer waives any claims against Seller and, to the extent permitted by*
473 *law, against any real estate licensee involved in the negotiation of this Contract, for any defects or other*
474 *damage that may exist at Closing of this Contract and be subsequently discovered by the Buyer or anyone*
475 *claiming by, through, under or against the Buyer.*

476                    ADDENDA AND ADDITIONAL TERMS
477 **19. ADDENDA:** The following additional terms are included in the attached addenda and incorporated into this
478* Contract (Check if applicable):

| | | | |
|---|---|---|---|
| ☐ A. Condominium Assn. | ☐ L. RESERVED | ☐ R. Rezoning | ☐ Y.  Seller's Attorney Approval |
| ☐ B. Homeowners' Assn. | | ☐ S. Lease Purchase/ Lease Option | ☐ Z.  Buyer's Attorney Approval |
| ☐ C. Seller Financing | ☐ M. Defective Drywall | | |
| ☐ D. Mortgage Assumption | ☐ N. Coastal Construction | ☐ T. Pre-Closing Occupancy | ☐ AA. Licensee-Personal Interest in Property |
| ☐ E. FHA/VA Financing | Control Line | ☐ U. Post-Closing | |
| ☐ F. Appraisal Contingency | ☐ O. Insulation Disclosure | Occupancy | ☐ BB. Binding Arbitration |
| ☒ G. Short Sale | ☒ P. Pre-1978 Housing | ☐ V. Sale of Buyer's | ☒  Other PROPERTY |
| ☐ H. Homeowners' Insurance | Statement (Lead | Property | DISCLOSURE |
| ☐ I. FIRPTA | Based Paint) | ☐ W. Back-up Contract | |
| ☐ J. Interest-Bearing Acct. | ☐ Q. Housing for Older | ☐ X. Kick-out Clause | |
| ☐ K. RESERVED | Persons | | |

479* **20. ADDITIONAL TERMS:**
480* 1. Seller will pay for the abstract of title and municipal lien search.
481* ~~2. Seller will close all open permits before closing.~~      GBR?
482* 3. During the inspection period, Seller will provide contact information for all service providers including Crestron.
483* _____
484* _____
485* _____
486* _____
487* _____
488* _____
489* _____
490* _____
491* _____
492* _____
493* _____

Buyer's Initials _RAR_____                    Page 9 of 10                Seller's Initials _GM_____ _____
FloridaRealtors/FloridaBar-ASIS-1   Rev. 6/10 © 2010 Florida Realtors® and The Florida Bar. All rights reserved.

## COUNTER-OFFER/REJECTION

494 □ Seller counters Buyer's offer (to accept the counter-offer, Buyer must sign or initial the counter-offered terms and
495 deliver a copy of the acceptance to Seller).
497* □ Seller rejects Buyer's offer.

498 **THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT. IF NOT FULLY UNDERSTOOD, SEEK THE ADVICE**
400 **OF AN ATTORNEY PRIOR TO SIGNING.**

500 **THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR.**

501 *Approval of this form by the Florida Realtors and The Florida Bar does not constitute an opinion that any of the terms*
502 *and conditions in this Contract should be accepted by the parties in a particular transaction. Terms and conditions*
503 *should be negotiated based upon the respective interests, objectives and bargaining positions of all interested*
504 *persons.*

505 AN ASTERISK (*) FOLLOWING A LINE NUMBER IN THE MARGIN INDICATES THE LINE CONTAINS A BLANK TO
506 BE COMPLETED.

507* Buyer: _____    Date: 2/4/11

508* Buyer: _____    Date: _____

509* Seller: _____    Date: 2/7/11

510* Seller: _____    Date: _____

511 Buyer's address for purposes of notice                    Seller's address for purposes of notice
512* _____                        _____
513* _____                        _____
514* _____                        _____

515 **BROKER:** Listing and Cooperating Brokers, if any, named below (collectively, "Broker"), are the only Brokers entitled
516 to compensation in connection with this Contract. Instruction to Closing Agent: Seller and Buyer direct Closing Agent
517 to disburse at Closing the full amount of the brokerage fees as specified in separate brokerage
518 agreements with the parties and cooperative agreements between the Brokers, except to the extent Broker has
519 retained such fees from the escrowed funds. This Contract shall not modify any MLS or other offer of compensation
520 made by Seller or Listing Broker to Cooperating Brokers.

521* ____S.Stantic/D.Goldentayer____                         ____Mirce Curkoski____
522 Cooperating Sales Associate, if any                      Listing Sales Associate

523* ____Keller Williams Realty____                          ____One Sotheby's Int'l Realty____
524 Cooperating Broker, if any                               Listing Broker

FloridaRealtors/FloridaBar-ASIS-1   Rev. 6/10 © 2010 Florida Realtors® and The Florida Bar. All rights reserved.

The clause below will be incorporated into the Contract between _____ **NEVIN K. SHAPIRO** _____ (Seller) and ____**Rex Runzheimer and/or assignee**____ (Buyer) concerning the Property described as _____ **5380 N. Bay Rd. Miami Beach, FL 33140** _____ only if initialed by all parties:

(RAR) (____) - (RR)(____) **K. Pre-1978 Housing Lead-Based Paint Warning Statement:** "Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase." For purposes of this addendum, lead-based paint will be referred to as "LBP" and lead-based paint hazards will be referred to as "LBPH."

(1) **LBP/LBPH in Housing: Seller** has no knowledge of LBP/LBPH in the housing and no available LBP/LBPH records or reports, except as indicated: (describe all known LBP/LBPH information, list all available documents pertaining to LBP/LBPH and provide documents to **Buyer** before accepting **Buyer's** offer) _____

_____

_____

(2) **Lead-Based Paint Hazards Inspection: Buyer** waives the opportunity to conduct a risk assessment or inspection for the presence of LBP/LBPH **unless this box is checked (☒ Buyer** may, within the Inspection Period, conduct a risk assessment or inspection for the presence of LBP/LBPH in accordance with the provisions of paragraph 8(a) or H. LBP/LBPH conditions that are unsatisfactory to **Buyer** will be treated as "warranted items" for purposes of paragraphs 8(a)(2) and (3) only).

(3) **Certification of Accuracy: Buyer** has received the pamphlet entitled "Protect Your Family From Lead in Your Home" and all of the information specified in paragraph (1) above. Licensee has notified **Seller** of **Seller's** obligations to provide and disclose information regarding lead-based paint and lead-based paint hazards in the property as required by federal law (42 U.S.C. 4852d) and is aware of his or her obligation to ensure compliance with federal lead-based paint law. **Buyer, Seller** and each licensee has reviewed the information above and certifies, to the best of his or her knowledge, that the information he or she has provided is true and accurate.

| | | | |
|---|---|---|---|
| _(signature)_ | 3/13/11 | _(signature)_ | 3/14/11 |
| Buyer | Date | Seller | Date |
| | | | |
| Buyer | Date | Seller | Date |
| _Nadja Stautic_ | 03/13/11 | | |
| Selling Licensee signature | Date | Listing Licensee signature | Date |

Buyer ( RAR (____) and Seller (____) (____) acknowledge receipt of a copy of this page.

FARA-10   1/09   © 2009   Florida Association of REALTORS®   All Rights Reserved   Page _____ of Addendum No._____

1. The clause below will be incorporated into the Contract between _____ **Nevin K. Shapiro** _____ (Seller)
2. and _____ **Rex Runzheimer and/or assignee** _____ (Buyer) concerning the Property described as _____
3. **5380 N. Bay Rd. Miami Beach, FL 33140** _____ only if initialed by all parties:

4. (_RAR_ (____) - _ÞM_ )(____) V. Property Disclosure Statement: This offer is contingent on Seller completing, signing and
5. delivering to Buyer a written real property disclosure statement within 3 days from Effective Date. If the statement discloses any
6. material information about the Property that is unacceptable to Buyer, Buyer may cancel this Contract by written notice to
7. Seller within 3 days from receipt of Seller's written statement.

8. Buyer (_RAR_ (____) and Seller (_ÞM_ )(____) acknowledge receipt of a copy of this page.
9. FARA-10   1/09   © 2009   Florida Association of Realtors®   All Rights Reserved                   Page _____ of Addendum No. ____

## ADDENDUM TO "AS IS" RESIDENTIAL CONTRACT

THIS ADDENDUM ("Addendum") is made part of that certain "AS IS" Residential Contract for Sale and Purchase (the "Contract"), being entered into between REX RUNZHEIMER, an individual, and/or assignee ("Buyer"), and JOEL L. TABAS, as Chapter 7 Trustee of the Bankruptcy Estate of Nevin Karey Shapiro, Case No. 09-36418 ("Seller"), for purchase and sale of residential property located at 5380 N. Bay Road, Miami Beach, FL (the "Property"). Except as otherwise set forth and defined in this Addendum, all capitalized terms used in this Addendum shall have the same meaning and effect as when used in the Contract. To the extent any inconsistency or conflict shall exist between the terms and provisions of this Addendum and the terms and provisions set forth in the Contract, the terms and provisions of this Addendum shall supersede and control including, without limitation, the identification of Seller as set forth above.

1.    Effective Date. The "Effective Date" of the Contract as hereby amended (the "Amended Contract") shall be dated that the last one of Seller and Buyer shall execute and deliver the Contract and this Addendum. Either Buyer or Seller may evidence its execution of this Amended Contract by delivering a signed copy of the Amended Contract to the other party or its representatives by facsimile or electronic transmission and any such signed copy of this Amended Contract same shall be deemed an original for all purposes.

2.    Purchase Price and Deposits. The Purchase Price to be paid by Buyer to Seller for sale and purchase of the Property shall be Five Million and ~~Five Hundred Thousand~~ *Seven Hundred and Fifty Thousand* and 00/100 Dollars (~~$5,500,000.00~~). *$5,750,000* The Additional Deposit to be delivered by Buyer pursuant to Paragraph 2(a) of the Contract (the "Additional Deposit") shall be Four Hundred and ~~Fifty~~ *Seventy Five* Thousand and 00/100 Dollars (~~$450,000.00~~). *$475,000.00*  **/RAR** *03/13/11*

3.    Court Supervision and Approval. Buyer understands that the Property, the Trustee and the sale of the Property are all subject to supervision by the U.S. Bankruptcy Court for the Southern District of Florida, Miami Division (the "Court"), in Case No. 09-36418-BKC-LMI; and therefore, notwithstanding anything to the contrary, the following shall apply:

A.    The Amended Contract shall be non-binding on Seller until the Court approves the Amended Contract; and any Court approval of the Amended Contract will be made subject to any higher and best offers received prior to hearing approving the Amended Contract.

B.    The performance of all obligations, liabilities and indemnity obligations of Seller under the Amended Contract, including those running to Broker, are subject to the jurisdiction of the Court. All disputes arising under the Amended Contract shall be resolved by the Court.

~~C.    Prior to issuance of the Court's Order approving bidding procedures and authorizing the sale of the Property to take place, Seller shall have the right to terminate the Amended Contract and withdraw the Property from the market at any time if Seller deems same to be in the best Interest of the Estate. Should Seller terminate the Amended Contract and remove the Property from the market, Seller shall have no liability to Broker.~~  **/RAR**

D.    Any assignment of the Amended Contract must be approved by the Court.

{M3021630;2}

E.    The deposits to be delivered by Buyer pursuant to Paragraph 2 of the Amended Contract (collectively, the "Deposits"), and the disbursement of any portion of the Deposits, shall be subject to further supervision and control of the Court, including possible Court order that any deposits collected by the Escrow Agent be delivered to the Trustee for disbursement in accordance with the terms of the Contract.

F.    The form of deed to be given by Seller in connection with a sale of the Property will be a Trustee's Deed free and clear of liens, claims and encumbrances pursuant to 11 U.S.C. § 363, but otherwise "AS-IS, WHERE IS", with no warranties of any type provided by the Trustee, his attorneys or any other agents of Seller. Pursuant to 11 U.S.C. § 363, all liens, claims and encumbrances on the Property shall attach to the proceeds of sale, and shall be resolved in accordance with the Bankruptcy Code.

G.    Buyer shall be deemed the stalking horse bidder with respect to any auction involving the sale of the Property. The Court's Order approving bidding procedures shall be in a form satisfactory to Seller and Buyer and shall include the following bid protections in favor of Buyer:

(i)    requirement that any initial bid submitted by a qualified bidder other than Buyer shall be equal to or greater than ~~Six Million and 00/100 Dollars ($6,000,000)~~ (the "Initial Over Bid"); and *Five Million and Seven Hundred and Fifty Thousand and 00/100 ($5,750,000)* (RAR Ø7)

(ii)    requirement that if Buyer is not the successful bidder at the auction of the Property that the Buyer receive a breakup fee for all reasonable fees and costs associated with Buyer's attempted acquisition of the Property (the "Breakup Fee"), provided however, that the Breakup Fee shall not exceed ~~three percent of the Initial Over Bid.~~ *forty thousand and 00/100 ($40,000).* (RAR Ø7)

4.    Approval Submissions / Closing. Seller shall file with the Court a motion in appropriate form seeking approval of the Amended Contract within three (3) business days after Seller receives evidence that Buyer has delivered the Additional deposit to the Escrow Agent. Buyer and Seller both agree to cooperate and provide to each other and the Court all appearances, information, materials and assistance reasonably requested by the Court, each other, or any party in interest, in order to enable the Court to enter, as rapidly as possible, an order approving the Amended Contract (an "Approval Order"). In the event the Court enters an order denying Court approval, then, upon the expiration of any appeal rights or periods, the Amended Contract shall be deemed terminated and the Deposits shall be returned to the Buyer. Further, in the event Seller is unable to obtain an Approval Order within sixty (60) days of the Effective Date, at any time thereafter, either party may terminate the Amended Contract by notice to the other party; provided, either party may extend the said 60-day period for any days of day resulting from willful or negligent delay by the other party. In the event the Amended Contract is terminated pursuant to this paragraph: (a) Buyer shall deliver to Seller, at no cost to Seller, the originals or copies of all new reports or materials pertaining to the Property which Buyer may have caused to be prepared with respect to the Property; (b) Buyer's deposits shall be returned to Buyer; (c) each party shall bear its respective costs and attorneys fees, and (d) all other rights and obligations existing under the Amended Contract shall be deemed null and void. If the Court enters an Approval Order, both parties shall cooperate cause a closing under the

Amended Contract to occur within three (3) business days after the Approval Order becomes final and non-appealable.

5. <u>Conditions.</u> Notwithstanding anything to the contrary in the Contract, the following shall apply:

A. Seller makes no warranties to Buyer whatsoever concerning the status or condition of the Property ("Conditions"), including without limitation the following: (i) title to the Property, (ii) the Property's compliance with any existing permits, codes or other governmental regulations or requirements, (iii) flood zone designation, (iv) availability of utilities, (v) hazardous substances or other environmental conditions, or (vi) facts materially affecting the value of the Property whether or not such facts are readily observable. The foregoing is, however, subject to the obligation of Seller to deliver, at closing, a Trustee's Deed in the form set forth in Paragraph 3.F. hereof.

B. Seller shall have (a) no obligation to make any investigations or determinations with respect any Conditions; (b) no liability to reimburse Buyer for any costs which Buyer may incur In connection with Buyer making any investigations or determinations with respect to any Conditions; (c) no obligation with respect to any open permits; and (d) no obligation to reduce the Purchase Price of the Amended Contract as a result of any determinations Buyer may make with respect to any Conditions.

C. Except as set forth in Paragraphs 11 and 18.M of the Contract, Seller shall have no obligation to perform any repairs or maintenance to the Property prior to delivering possession of the Property to Buyer at Closing.

6. <u>Closing Costs.</u> Notwithstanding anything to the contrary in the Amended Contract, Seller shall not be obligated to pay any of the costs to close on a sale and transfer of the Property from Seller to Buyer other than (i) Seller's payment of the commission due Broker, (ii) Seller's prorated portion of real estate taxes for the tax fiscal year during which the Closing occurs, (iii) past due assessments, (iv) Seller's payment for utility services provided to the Property prior to the day of Closing, (v) recording fees paid on documents recorded to clear title, (vi) documentary stamp taxes on the deed, and (vii) Seller's attorneys' fees. Without limitation, Seller shall not be required to pay any title search or title insurance charges, survey costs, or other fees payable on transfer of the property, or recording fees on the deed. Buy shall be responsible for all special assessments not past due, and all other taxes and other governmental fees and charges incurred in connection with transferring title to the Property to Buyer.

7. <u>Title Examination and Insurance.</u> Buyer, at Buyer's cost, shall obtain its own title abstract, municipal lien search, title review, title insurance commitment, owner policy of title insurance and/or lender policy of title insurance, as applicable, from a title agent and title company selected by Buyer.

8. <u>Governing Law.</u> Venue and Attorney's Fees. The Contract shall be construed under Florida law. In the event of litigation involving Seller or its employees or agents arising out of or relating to the Amended Contract, the Property or the relationship created by *the*

Amended Contract, venue shall be exclusively in the United States Bankruptcy Court in and for the Southern District of Florida, Miami Division.

SELLER:                                          BUYER:

_____ 2/14/11      _____ 2/11/11
Joel L. Tabas, Trustee                           Rex Runzheimer

**Addendum to Contract**

Addendum No. _____1_____ to the Contract dated _____03/15/2011_____ between

_____ NEVIN K. SHAPIRO _____ (Seller)

and _____ Rex Runzheimer and/or assignee _____ (Buyer)

concerning the property described as:

_____ 5380 N. Bay Rd. Miami Beach, FL 33140 _____

(the "Contract"). Buyer and Seller make the following terms and conditions part of the Contract:

1. Purchase Price is reduced to $5,740,000.00. All other terms of the original contract remain the same.

| | |
|---|---|
| Date: _____ | Buyer: _____ |
| Date: _____ | Buyer: _____ |
| Date: _4/6/11_ | Seller: _~signature~_ |
| Date: _____ | Seller: _____ |

This form is available for use by the entire real estate industry and is not intended to identify the user as a REALTOR. REALTOR is a registered collective membership mark that may be used only by real estate licensees who are members of the National Association of REALTORS and who subscribe to its Code of Ethics. The copyright laws of the United States (17 U.S. Code) forbid the unauthorized reproduction of blank forms by any means including facsimile or computerized forms.

ACSP-2a    Rev. 6/94    ©1994 Florida Association of REALTORS®    All Rights Reserved

 

formsimplicity

## Mailing Information for Case 09-36408-LMI

**Electronic Mail Notice List**

The following is the list ~~of parties~~ who are currently on the list to receive e-mail notice/service for this case.

- Joaquin J Alemany    joaquin.alemany@hklaw.com, jose.casal@hklaw.com
- Eric N Assouline    ena@assoulineberlowe.com, jc@assoulineberlowe.com;ah@assoulineberlowe.com
- Douglas A Bates    dbates@bergersingerman.com, fsellers@bergersingerman.com;efile@bergersingerman.com
- Paul J. Battista    pbattista@gjb-law.com, gjbecf@gjb-law.com
- Jeffrey W. Blacher    jblacher@blacherlaw.com
- David S Catuogno    dcatuogno@formanlaw.com
- Miguel M Cordano    mc@lgplaw.com,
  bjo@lgplaw.com;mra@lgplaw.com;fpc@lgplaw.com;jlg@lgplaw.com;rb@lgplaw.com;mbl@lgplaw.com;mds@lgplaw.com;lbr@lgplaw.com
- Andrew C Deweese    , ad@lydeckerdiaz.com
- Drew M Dillworth    ddillworth@stearnsweaver.com, marocha@stearnsweaver.com;rross@stearnsweaver.com;mmesones-mori@stearnsweaver.com
- Mitchell A. Dinkin    mdinkin@bdblaw.com, jlahti@bdblaw.com;apinango@bdblaw.com;njohnson@bdblaw.com
- Mark A Drummond    mad@hostetler-kowalik.com
- Bertis A Echols    bert.echols@thehalelawgroup.com, denise.hardin@thehalelawgroup.com;bert.echols@thehalelawgroup.com
- Jonathan S. Feldman    jfeldman@melandrussin.com, ltannenbaum@melandrussin.com;mrbnefs@yahoo.com
- Gary M Freedman    gfreedman@tabasfreedman.com, jackie@tabasfreedman.com;lise@tabasfreedman.com
- Jeffrey B Greenspan    jeff.greenspan@mbtlaw.com
- Jeffrey A Hokanson    jhokanson@hklawfirm.com, jwellner@hklawfirm.com
- Linda M Jackson    linda.Jackson@IZHMLAW.COM, marilyn.rivera@izhmlaw.com;karina.dominguez@izhmlaw.com
- Richard A Johnston    richard.johnston@fowlerwhite.com, cynthia.ferguson@fowlerwhite.com;ann.greulich@fowlerwhite.com;pgiordano@fowlerwhite.com
- Kenneth M Jones    kjones@moodyjones.com
- John W. Kozyak    jk@kttlaw.com, ycc@kttlaw.com;la@kttlaw.com
- Thomas R. Lehman    trl@lkllaw.com, jmh@lkllaw.com;esf@lkllaw.com;rb@lkllaw.com
- David Hywel Leonard    hleonard@carltonfields.com, lrodriguez@carltonfields.com;tpaecf@cfdom.net
- Paul J McMahon    pjm@pjmlawmiami.com
- Miami-Dade County Tax Collector    mdtcbkc@miamidade.gov
- Robert B Miller    rmiller@tabasfreedman.com, aida@tabasfreedman.com
- Barry E. Mukamal    bankruptcy@marcumllp.com
- Kenneth D Murena    kmurena@dvllp.com, lfd@dvllp.com
- Ronald G Neiwirth    rgn@fowler-white.com, mlf@fowler-white.com
- Office of the US Trustee    USTPRegion21.MM.ECF@usdoj.gov
- Kristopher E Pearson    kpearson@stearnsweaver.com, mmasvidal@stearnsweaver.com;rross@stearnsweaver.com;mmesones-mori@stearnsweaver.com
- Anila Rasul    arasul@kahaneandassociates.com, jbuchanan@kahaneandassociates.com;dphillips@kahaneandassociates.com
- Andrea L Rigali    arigali@tabasfreedman.com, diane@tabasfreedman.com;pmoncada@tabasfreedman.com;mcampbell@tabasfreedman.com
- Luis E Rivera II    luis.rivera@henlaw.com
- David L Rosendorf    dlr@kttlaw.com, rcp@kttlaw.com;CWT@kttlaw.com;ycc@kttlaw.com
- Steven H. Rothstein    steverothstein@miamibeachfl.gov
- Michael L Schuster    mschuster@gjb-law.com, gjbecf@gjb-law.com;mpacheco@gjb-law.com
- Theodore F Smith    tsmith@tedsmithlaw.com
- Aaron L Swimmer    ~~als@swimmerlawassociates.com~~
- Joel L Tabas    jtabas@tabasfreedman.com,
  karen@tabasfreedman.com;paola@tabasfreedman.com;rdecker@tabasfreedman.com;afiorentino@tabasfreedman.com;jseff@tabasfreedman.com;francis@tabasfreedma
- Joel L Tabas    JLT@tfsmlaw.com, jtabas@ecf.epiqsystems.com;nancy@tfsmlaw.com;scott@tfsmlaw.com
- Frank Terzo    frank.terzo@gray-robinson.com, lnegron@gray-robinson.com;jennifer.phillips@gray-robinson.com
- Peter F. Valori    pvalori@dvllp.com, spitta@dvllp.com
- Theodore R Walters    twalters@cl-law.com
- Roy L. Weinfeld    rlw@weinfeldlaw.com

**Manual Notice List**

The following is the list of **parties** who are **not** on the list to receive e-mail notice/service for this case (who therefore require manual noticing/service). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

Craig A Bryan
Bryan, Bradley & Williams, LLC 3003
Tamiami Trail North #210
Naples, FL 34103

Jack J Carriglio
Jeffrey B. Greenspan
Eric E Newman
123 N Wacker Dr #1800
 Chicago, IL 60606

Mirce Curkoski
One Sotheby's International Realty
1537 San Remo Ave
Coral Gables, FL 33146

Richard Johnston
P.O. Box 317
1240 Cedars Valley Dr.
St. Albans, MO 63073

Michael A Hanson
2501 N Orient Rd #D
Tampa, FL 33619

David S Harris
6431 SW 39 St
Miami, FL 33155

Rachel L Hazaray
101 W Ohio St #2100
Indianapolis, IN 46204

Sean P O'Connor
211 N Krome Ave
Homestead, FL 33030

Bruce Rishty
353 W 47 St, PH-A
Miami Beach, FL 33140

Nancy Telese
PO Box 291
Palm Beach, FL 33480

Carl A. Howes
Vice President Pachira Company
Newgate Tower
5150 North Tamiami Trail, Suite 504
Naples, FL 34103

Capitol Investments USA, Inc.
Nevin Shapiro
c/o Maria Elena Perez PA
145 Madeira Ave Ste 310
Coral Gables, Florida 33134-4520

Allan H. Schwartz
Gail L. Schwartz
8846 NW 3rd Ct
Coral Springs, FL 33071-7404

BJS, LP
5150 North Tamiami Trail
Suite 504
Naples FL 34103-2822

Barry L. Alvarez and Cynthia A
Alvarez Revocable Trust
5822 Tree Line Drive
Madision, WI 53711-5828

Bayside Capital Management
151 Central Ave., Suite 200
Holland, MI 49423-2831

Ben Staler (Regent Inv. Co)
4101 Gulf Shore Blvd, Suite 9 North
Naples FL 34103-2903

Benjamin A. Stanziale, Jr., Trustee
c/o Forman Holt Eliades & Ravin LLC
80 Route 4 East - Suite 290
Paramus, NJ 07652-2661

Bradley Associates LTD
c/o Sherwin Jarol
111 E. Wacker, Suite 900
Chicago, IL 60601-4304

Bradley Associates Limited Partnership
111 East Wacker Dr #900
Chicago, IL 60601-3713

Bryan , Bradley Williams, LLC
3003 Tamiami Trail N
Naples FL 34103-2714

C. Alan Hernley
12445 Medalist Parkway
Carmel, In 46033-8933

CIT Technology Financing Services, Inc.
800 E Sonterra Blvd #240
San Antonio TX 78258-3940

Cap One
PO Box 85520
Richmond, VA 23285-5520

Carlton Fields PA
4000 Internatinoal Place
100 SE 2nd St
Miami, Florida 33131-2100

Charles W. Brown
5864 S East Street
Indianapolis, IN 46227-2018

Craig A Bryan
Bryan, Bradley & Williams, LLC
3003 Tamiami Trail North #210
Naples, FL 34103-2714

Cybur Investments, LLC
400 Arthur Godfrey Road
Miami Beach, FL 33140-3516

Dan DeRose
504 N Grand Ave
Pueblo, CO 81003-3113

Dave Birnbaum
149-40 14th Avenue
Whitestone, NY 11357-1730

Dave and Elizabeth Pitera
c/o Ricard M. Treiser, Esq.
Treiser Collins
3080 Tamiami Trail E.
Naples FL 34112-5715

David C. Rowe
81 Seagate Drive, Suite 1201
Naples, FL 34103-2485

David R. White
1936 Coco Plum Way
Naples FL 34105-3066

David White
c/o Alex R. Figares, Esq.
4001 Tamiami Trail North #300
Naples FL 34103-3556

Donald L. Hope
12979 White Violet Drive
Naples, FL 34119-8510

Donald L. Hope Donna J. Hope
c/o Richard M. Treiser, Esq.
Treiser Collins
3080 Tamiami Trail E.
Naples FL 34112-5715

Dr. John Russell Eastman
4901 WEIR DR.
Munice IN 47304-6135

Dr. John Russell Eastman
Indiana Trust and Investment Mgt. Co.
Trustee for John R. Eastman, IRA
315 West Adams St
Munice IN 47305-2304

First Financial Bank
POB 929
Columbus, IN 47202-0929

Fred Wilson
331 Burton Ave
Highpoint, NC 27262-8071

Fred Wilson
c/o Alex R. Figares, Esq.
4001 Tamiami Trail North #300
Naples FL 34103-3556

Gaye Mueller
455 Pennridge Dr.
Indianapolis, IN 46240-3033

Gemb/Chevron
4125 Windward Plz
Alpharetta, GA 30005-8738

George Garrett
6938 Kim Kres Court
Indianapolis, IN 46278-1586

Glenda Kauffman
9200 Carlyle Ave.
Surfside, FL 33154-3030

Greg Stake
799 Swanee Ct
Maitland, FL 32751-4582

Grocery Marketing, Inc.
601 N Congress Ave
Delray Beach, FL 33445-4621

Hyman B. Birnbaum
14 Woodstock Dr.
Farmington, MA 01701-3084

Hyman B. Birnbaum
149-40 14th Avenue
Whitestone, NY 11357-1730

Indiana Trust and Inv. Mgt. Co.,
Trustee for John R. Eastman, IRA
315 West Adams St
Munice IN 47305-2304

Internal Revenue Service
Centralized Insolvency Operations
PO Box 21126
Philadelphia,  PA 19114-0326

Irwin Union Bank & Trust,
Trustee of the Stephen Hokanson IRA
500 Washington Street
PO Box 929
Columbus, IN 47202-0929

Irwin Union Bank & Trust,
Trustee of the Stephen Hokanson IRA
PO Box 929
Columbus, IN 47202-0929

Irwin Union Bank & Trust,
Trustee of the Susan Grinwis IRA
PO Box 929
Columbus, IN 47202-0929

Irwin Union Bank & Trust,
Trustee of the Susan Grinwis IRA
500 Washington Street
PO Box 929
Columbus, IN 47202-0929

Jack E. & Randa L. Hulse
20922 Edgewater Drive
Noblesville, IN 46062

Jack Williams
282 Mermaids Bite
Naples, FL 34103

James Meyers Investments, LLC
15226 Long Cove Blvd.
Carmel, IN 46033-8104

James R. Fisher
5643 Washington Blvd.
Indianapolis, IN 46220-3031

James Keys
809 91st Avenue North
Naples, FL 34108

Janet T. Sanders
8660 Vintner Court
Indianapolis, IN 46256-9377

Jeffrey Hightchew
308 North Shore Lane
Gilbert, AZ 85233-4702

John & Judy Spoelhof Foundation
151 Central Avenue, Suite 200
Holland, MI 49423-2831

John McGeeney Trust
Attention: Daniel Aguilar
225 Broadwy 5th Floor
San Diego, CA 92101-5005

John Russell Eastman
4901 Weir Dr.
Munice, IN 47304-6135

John S. Wright
655 Fairwell Drive
Madision, WI 53704-6029

John W. Spoelhof IRA
151 Central Avenue, Suite 200
Holland, MI 49423-2831

Jon E. Smith
4328 East St Rd 234
Greenfield, In 46140-9043

Joseph Amey
7320 Bosky Springs Street
Las Vegas NV 89131-4535

Marcia Huston
14 Woodstock Dr.
Framingham, MA 01701-3084

Miami Heat
601 Biscayne Blvd.
Miami, Florida 33132-1801

Miami-Dade County
140 W. Flagler Street
Suite 1407
Miami, FL 33130-1561

Michael I. Schwartz
8846 NW 3rd Ct
Coral Springs, FL 33071-7404

Miriam Menoscal
903 W 46th St
Miami Beach, FL 33140-2901

Muscato Family
Muscato Family Limited Partnership
360 Forst Park Cir.
Longwood, FL 32779-5870

Nalini Charran
9 Island Avenue
Unit 2415
Miami Beach, FL 33139-1349

Naples New Fuel LLC
3003 Tamiami Trail No
Ste 210
Naples, Fl 34103-2714

Nelson Gonzalez
2515 Flamingo Drive
Miami Beach, FL 33140-4314

Capitol Investments USA, Inc.
Nevin Shapiro
c/o Maria Elena Perez PA
145 Madeira Ave Ste 310
Coral Gables, Florida 33134-4520

Peter R. Indovina
2816 N. Elm Lane
Arlington Heights IL 60004-2105

Philip DiCosola
4N494 Mountain Ash Dr.
Wayne, IL 60184-2415

Raymond Rotolo
5409 Fair Elms Ave
Western Springs IL 60558-1815

Residential Properties, LLC
3003 Tamiami Trail No
Ste 210
Naples, Fl 34103-2714

Richard Johnston
P.O. Box 317
1240 Cedars Valley Dr.
St. Albans, MO 63073

Richard Magnone
c/o AFC Insurance Agency
150 S. Bloomingdale Rd. #210
Bloomingdale IL 60108-1493

Richard P. Johnston
1240 Cedars Valley Dr
St. Albans, Mo 63073-1122

Richman Greer
Miami Center, Suite 1000
201 South Biscayne Blvd.
Miami, Florida 33131-4332

Robert A Haines Sr.
John A. Scarsella
c/o Cummings & Lockwood LLC
3001 Tamiami Trail North, Suite 300
Naples, FL 34103-4172

Robert A. Haines
3944 Miami Rd., Apt. 207
Cincinnati, OH 45227-3754

Robert A. Haines, Sr.
7425 Pelican Blvd., Apt. 1903
Naples, FL 34108-5505

Robert Smith
4862 Pendula Dr
Carmel, In 46033-3993

Ronald Glah
81 Seagate Dr, 1003
Naples, FL 34103-2485

SCS Services
1231 Kane Concourse
Bay Harbor Islands, FL 33154-1937

Sharon Hackmeyer
8846 NW 3rd Ct.
Coral Gables, FL 33071-7404

Shea Mara Enterprise
10424 SW 23 Ct
Davie, FL 33324-7622

Sherry M. Schwartz
Vivian Angel
8846 NW 3rd Ct
Coral Springs, FL 33071

Sherwin Jarol
111 E. Wacker Suite 900
Chicago, Ill 60601-4304

Smith Implements, Inc.
1292 East Main Street
Greenfield, IN 46140

Spoelhof Charitable Lead Trust
151 Central Avenue, Suite 200
Holland, MI 49423-2831

Spoelhof Charitable Remainder
151 Central Avenue, Suite 200
Holland, MI 49423-2831

Spoelhof Family LTD
151 Central Avenue, Suite 200
Holland, MI 49423-2831

Susan Grinwis
4561 Gulfshore Blvd N, #707
Naples, FL 34103-2647

T. Currens (SEP IRA)
251 N Illinois Street, Suite 1200
Indianapolis IN 46204-1941

Terrance A. Smith
2215 N. Madision Ave.
Anderson, IN 46011-9583

Total Schwartz Family
8846 NW 3rd Ct
Coral Springs, FL 33071-7404

University of Miami
1507 Levante Ave.
Coral Gables, Florida 33146-2416

Victor R. Gonzalez
18862 SW 77th Court
Cutler Bay, FL 33157-8047

Victor J. Gonzalez, Sr.
9120 SW 68th Street
Miami, FL 33173-2450

Virginia Limited Partnership
9130 Galleria Ct Suite 312
Naples Florida 34109-4417

Virginia Limited Partnership
6605 San Leandro St.
Oakland, CA 94621

Vivian Angel
8846 NW 3rd Ct
Coral Springs, FL 33071-7404

Wachoviacc
PO Box 3117
Winston Salem, NC 27102-3117

Wesley V. Smith
3636 Recreation Lane
Naples, FL 34116-7303

William Bradley
2836 Silverleaf Lane
Naples FL 34105-3032

Richard Berndt
Janet Berndt
c/o Sean P. O'Connor
211 N. Krome Ave.
Homestead, FL 33030

Eleanor T. Barnett
Heller Waldman, P.L.
3250 Mary Street, suite 102
Coconut Grove, FL 33131

Michael A. Hanson
2501 N. Orient Rd. #D
Tampa, FL  33619

Rachel L. Hazaray
101 W Ohio St., #2100
Indianapolis, IN  46204

Thaddeus Jones
15841 Pines Blvd., #19
Pembroke Pines, FL 33027-1220

Mark Rankin
2179 Maramonte Way
Naples, FL 34105-3075

Carl A. Howes
Vice President, Pachira Company
5150 North Tamiami Trail, Suite 504
Newgate Tower Naples, FL 34103

Elizabeth Wood
894 Pine Street
Winnetka, IL 60093

GMAC
c/o Kenneth M Jones
1333 S University Dr #201
Plantation, FL 33324

Jeannine DeRoy
135 Pier View Street, Unit 404
Charleston, SC 29492-8456

Jeffrey H. Fink
Restani, Dittman & Hauser, P.A.
201 Alhambra Circle, Suite 1050
Coral Gables, FL 33134

Nancy Telese
446 Brazilian Avenue
Palm Beach, FL 33480

Peter Hubert Wood
894 Pine Street
Winnetka, IL 60093

Richard Berndt
8930 SW 162 Terr.
Miami, FL 33157

Victor Gonzalez
7786 SW 193 Lane
Miami, Florida 33157

Mirce Curkoski
One Sotheby's International Realty
1537 San Remo Ave.
Coral Gables, FL 33146

Michael A. Hanson, Esq.
Edward R. Hanson, Jr., Esq.,
Hanson Law Office
2501 N. Orient Rd., Suite D
Tampa, FL 33619

Jack Carriglio
Jeffrey B. Greenspan
Eric E. Newman
123 N. Wacker Dr., #1800
Chicago, IL 60606

Nancy Telese
PO Box 291
Palm Beach, FL 33480

Bruce Rishty
353 W. 47th Street, PH-A
Miami Beach, FL 33140

Susan Moss
133 Hobart St.
New Haven, CT 06551

Basketball Properties Ltd
ATTN: Eve Wright, Esq
601 Biscayne Blvd
Miami FL 33132-1801

Gaye Mueller
455 Pennridge Dr.
Indianapolis, IN 46240-3033

James D Keys
c/o Michael R.N. McDonnell
5150 Tamiami Tr N #501
Naples FL 34103-2812

James R. Fisher
8900 Keystone Crossing Suite 1080
Indianapolis, IN 46240-2134

Textron Financial Corporation
c/o John Isbell
King & Spalding LLP
1180 Peachtree St NE
Atlanta GA 30309-3531

Wells Fargo Bank, N.A.
P.O. Box 13765, R4057-01P
Roanoke, VA 24037-3765

Douglas A. Bates, Esq.
Berger Singerman, P.A.
200 South Biscayne Boulevard
Suite 1000
Miami, FL 33131

Mark Burgin
21110 N.E. 21st Place
Miami, FL 33179

Richard Johnston
C/o: Elizabeth Dombovary, Esq.
Garbett, Stiphany, Allen & Roza, P.A.
80 S.W. 8th Street, Suite 3100
Miami, FL 33130-3004

Stephen P. Hale, Esq.
Bert Echols, Esq.
88 Union Avenue, Suite 700
Memphis, TN 38103

Bayside Capitol Management, LLC
c/o Foster Swift Collins & Smith
1700 East Beltline, N.E., Suite 200
Grand Rapids, MI 49525-7044

Invest IV Partners, LLC
c/o Foster Swift Collins & Smith
1700 East Beltline, N.E., Suite 200
Grand Rapids, MI 49525-7044

James Meyer Investments, LLC
c/o Bingham McHale, LLP
Attn: Kathleen Rudis, Esq.
2700 Market Tower, 10 W. Market St.
Indianapolis, IN 46204

Kelley Drye & Warren, LLP
Attn: Robert L. LeHane, Esq.
101 Park Avenue
New York, NY 10178-0062

Wachovia Bank, N.A.
Fox Rothschild LLP
c/o Heather L. Ries, Esq.
222 Lakeview Ave., Suite 700
West Palm Beach, FL 33401

Wells Fargo Bank, National Association
Wells Fargo Bank, National Association
P. O. Box 13765, R4057-01P
Roanoke, VA 24037-3765

Deutsche Bank
Gregg S Ahrens, Esq.
Kahane & Associates, PA
8201 Peters Road
Suite 3100
Plantation, Florida 33324

Roy D. Oppenheim
Oppenheim & Pilelsky
2500 Weston Rd Ste 404
Weston, Florida 33331-3618

Melinda S Thornton
Miami-Dade County Attorney'S Office
111 NW 1st St Ste 2810
Miami, Florida 33128-1930

Dan DeRose
504 N. Grand Avenue
Pueblo, Colorado 81003

Paul Steven Singerman
Berger Singerman
200 S Biscayne Blvd Ste 1000
Miami, Florida 33131-2310

Rex Runzheimer
c/o Eric van der Vlugt, Esq.
1111 Kane Concourse, #209
Bay Harbor, Florida 33154

~~Benjamark, LLC~~
~~6301 Ocean Front Walk, Unit 2~~
~~Playa Del Rey, CA 90293-7582~~

~~Chad Alvarez~~
~~1227 Woodbridge Trail~~
~~Waunakee, WI 53597-2628~~

~~David Pitera~~
~~2139 Snook Drive~~
~~Naples, FL 34102-1573~~

~~De Roy Family LP.~~
~~12023 Sail Place Drive~~
~~Indianapolis, In 46256-9441~~

~~JSB Investments, LLC~~
~~225 N. Michigan Ave, 11th Floor~~
~~Chicago, Ill 60601-7683~~

Janelle Drake
12023 Sail Place Drive
Indianapois, In 46256-9441

Relianz Mortgage Co.
c/o Sherwin Jarol
225 N. Michigan Ave, 11th Floor
Chicago, IL 60601-7683

Robert E. Nolan
2614 Bulrush Lane
Naples, FL 34105-3024

Franklin Investigations
633 Northeast 167th Street
North Miami Bch, FL 33162-2442

Jamie Ventures
225 N Michigan Ave, 11th Floor
Chicago, IL 60601-7683

South Beach Chicago, LLC
225 N Michigan Ave 11th floor
Chicago, IL 60601-7683

Stephen Hokanson
107 N. Pennsylvania St, Suite 800
Indianapolis, IN 46204-2423

WSG Development
400 41st Street, 2nd Floor
Miami Beach, FL 33140-3516

19271 Sterling Dr
Cutler Bay, FL 33157-7720

Victor Gonzalez

Victor Gonzalez 2006 Revocable Trust
19271 Sterling Drive
Miami, FL 33157-7720

Gaye Mueller
510 E 81st Street
Indianapolis, IN 42040-2562

Mark A. Rankin
900 Villa Florenza Drive
Naples, FL 34119-2317

South Beach Chicago 2008, LLC
South Beach Chicago, LLC
225 N Michigan Ave 11th floor
Chicago, IL 60601-7683

Relianz Mortgage, Inc.
225 N Michigan Ave 11th Floor
Chicago, IL 60601-7683

Newtown LP
225 N Michigan Ave, 11th Floor
Chicago, IL 60601-7683

South Beach Chicago 2007, LLC
225 N Michigan Ave, 11th Floor
Chicago, IL 60601-7683

Capitol Investments USA, Inc.
400 41st Street #506
Miami Beach, FL 33140-3516

Bank of America
PO Box 15311
Wilmington, DE 19884-0001
Updated 02/23/11

Hyman B. Birnbaum Revocable Trust
GrayRobinson, PA
1221 Brickell Ave, Suite 1600
Miami, FL 33131-3247
Updated 02/23/11

Jeffery L. Evans
111 16th Street
Naples, FL 34117-9413
Updated 02/23/11

John Scarsella
3855 Star-Center Dr, Suite B
Canfield, Ohio 44406-8063
Updated 02/23/11

# CAPITOL INV.