Page 1

1                  UNITED STATES BANKRUPTCY COURT
                    SOUTHERN DISTRICT OF FLORIDA
2

3

4

5

    IN RE:                    CASE NO. 09-36408-BKC-LMI
6

    CAPITOL INVESTMENTS USA,
7   INC.,

8               Debtor.
    _____/

9

10

11

12

    AMENDED MOTION TO COMPEL LEWIS TEIN, P.L. TO COMPLY
13  WITH SUBPOENA DUCES TECUM AND WAIVER OF WORK PRODUCT
      DOCTRINE FILED BY TRUSTEE (1349); SECOND AMENDED
14             MOTION FILED BY TRUSTEE (1380)

15

16

                        April 4, 2011

17

18           The  above-entitled cause came  on for
19  hearing before the HONORABLE LAUREL MYERSON ISICOFF,
20  one  of the Judges  in  the UNITED STATES BANKRUPTCY
21  COURT,  in and for the SOUTHERN DISTRICT OF FLORIDA,
22  at 51 SW 1st Avenue, Miami, Dade County, Florida, on
23  Monday,  April  4, 2011,  commencing  at  or  about
24  1:35 p.m., and  the following proceedings were had:
25                  Reported By:  Margaret Franzen

Page 2

1                         APPEARANCES:

2

3        TABAS FREEDMAN SOLOFF MILLER & BROWN, by
                    ROBERT B. MILLER, ESQUIRE
4          on behalf of Joel Tabas, Chapter 7 Trustee

5

6                    COFFEY BURLINGTON, by
                    KENDALL COFFEY, ESQUIRE
7                    BEN BRODSKY, ESQUIRE
                  on behalf of Lew Tein, P.L.

8

9

                         - - - - - - -

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 3

```
 1              THE COURT:  Capitol Investments USA, Inc.,
 2    09-36408, I'll take appearances.
 3              MR. MILLER:  Bob Miller for the trustee,
 4    your Honor.
 5              MR. COFFEY:  For the Lewis Tein law
 6    firm, Kendall Coffey and Ben Brodsky with Coffey
 7    Burlington.
 8              THE COURT:  Okay.  You know what, I took
 9    your appearances, but before we do that, I'm sorry, I
10    have one non-discovery matter that was improperly
11    calendared.
12              (Thereupon, another matter on the
13    Court's calendar was heard, after which the
14    following proceedings were had:)
15              THE COURT:  All right.  So, gentlemen, I've
16    reviewed the motion to compel and I have reviewed the
17    response that was filed, and so I guess, Mr. Miller,
18    I'll start with you.
19              Having reviewed the response and the
20    case law cited, what is your response?
21              MR. MILLER:  Your Honor, the issues that we
22    have with respect to our investigation are that we're
23    told, in the response filed by Lewis Tein, that they
24    produced everything other than these 46 pages of
25    protected attorney work product.
```

1          I knew that wasn't accurate when I

2    received the response Thursday and I contacted

3    them on Friday to advise that it was not

4    accurate, and attempted to resolve the motion,

5    which was unsuccessful across the board.  You

6    know, we'll -- we're going to stand on our

7    response and see you in court.

8          About 45 minutes ago, I got an e-mail

9    with a lot of documents attached to it from

10   counsel for Lewis Tein that supports my already

11   existing knowledge that not all of the documents

12   were attached.

13         What's more problematic is even based

14   upon that very untimely and unexplained -- there

15   was no explanation in the e-mail, it was just

16   sending me additional documents, what's more

17   troubling is that from a review of them, and I

18   did have time to do that, there's still documents

19   that we know exist, e-mails from -- exchanged

20   with Lewis Tein and the debtor, and we know that

21   because we got them off of Capitol Server that

22   have not been produced.

23         We also know, and would find it

24   extremely implausible that there wouldn't be

25   internal e-mails exchanged among the folks at

1    Lewis Tein.  None were produced, and not only

2    would we instinctively know that it would have to

3    be the case, but we were told by successor

4    counsel, Maria Perez, who had reviewed the files

5    at Lewis Tein's office and told us, yes, there

6    were indeed internal e-mails.

7            So we have a statement that complete

8    production was made, we have a concession by

9    Lewis Tein in the form of their e-mail today that

10   this didn't occur, and like I said, it still

11   hasn't occurred, and then we have the yearly

12   privilege log attached to the response.

13           Now, the document attached, I called it

14   a privilege log because it's labeled a privilege

15   log ---

16           THE COURT:  Document attached to what?

17           MR. MILLER:  The response.

18           THE COURT:  Okay.

19           MR. MILLER:  Lewis Tein's opposition to the

20   trustee's motion to compel, Docket Entry 1382, and

21   the document in question is the very last page of the

22   exhibits attached to the response, because we argued

23   waiver based upon failure to provide a privilege log

24   and on Thursday we get a privilege log.

25           We contact Lewis Tein on Friday to say

1    this is respectfully not a privilege log.  We

2    would want to know some identifying information

3    so that we could know, is this protected attorney

4    opinion work product or is this non-protected,

5    waivable by the client and the attorney wouldn't

6    have a say so in the matter, fact work product?

7            We know these were handwritten notes

8    and typed notes, but we don't know about what, we

9    don't know who they were provided to, which also,

10   of course, is required in a privilege log.

11           So, you know, I do know who Mr. Tein

12   is.  I don't know who, as an example, Mr. Capoti

13   is.  We have no identifying information even

14   about these individuals, but the bottom line is

15   the description, H/W notes and typed notes, which

16   are the only two descriptions, is woefully

17   inadequate for purposes of conducting a

18   meaningful privilege analysis.

19           The fact that after a year, okay, and

20   we've given the case law saying, you know, okay,

21   a month is appropriate, two months, maybe, but

22   five months, no, that's too long, a year, and

23   then to still not do it, and then after being

24   told it's not adequate, to refuse to amend and

25   supplement the privilege log, we think is exactly

1    the circumstances that require waiver.

2            And the purpose of the trustee's

3    investigation is that, you know, this isn't a

4    minor matter.  We have potential avoidance

5    claims, based on what we've seen, of $455,000 in

6    legal fees that Capitol paid on Mr. Shapiro's

7    behalf to Lewis Tein.  We have 350,000 in

8    additional value for a yacht transfer, where

9    there was a yacht that was purchased and a

10   discount was provided and $50,000 was exchanged

11   in that manner.  And then where we have a

12   $500,000 retainer received by Lewis Tein from

13   Shapiro, and Shapiro has alleged that Lewis Tein

14   failed to provide the contractual services under

15   that.  So certainly the investigation is

16   appropriate.

17           Not a single objection was ever filed

18   with respect to the subpoena, which requested all

19   of this.  I mean, we wanted their entire files,

20   and the fact that apparently, because what they

21   produced was just Capitol's records to us, when

22   they talk in their response in opposition about

23   3,000 pages, those aren't Lewis Tein documents.

24   We have a scattering of e-mails, we have a little

25   bit of correspondence, some retainer agreements,

1    but we don't know what these very staggering sums

2    of attorney's fees were spent on, other than

3    apparently these 46 pages of protected or not

4    protected, we don't know yet, work product.

5            But we would submit that the failure

6    to, at this point, have this issue properly

7    addressed for the Court and for us with the

8    depositions of the partners of Lewis Tein set for

9    a week from now, that this is exactly the type of

10   case where waiver is appropriate.

11           There has been no excuse in the

12   response as to the failure to provide a privilege

13   log all this time.

14           THE COURT:  All right.  Well, let me ask

15   you a question, Mr. Miller.  According to what I

16   read, there was some initial regular exchange between

17   your firm and Mr. Tein's firm regarding exchanges of

18   documents after the document request was set out, was

19   asked for, and there was this e-mail that, you know,

20   was a little bit of a, you know, we don't know why

21   you still want this stuff, tell us why so we can

22   figure out how we can respond, okay, and then nobody

23   did anything for a long time, until you -- your

24   office sent out your demand letter and then filed

25   this motion.

1          So my question for you is:  Within the
2     month or two preceding the filing of the March
3     2011 motion, not ten months ago, not a year ago,
4     like in the more recent past, what efforts did
5     you make, or anyone in your office make, to reach
6     out to the Tein firm to get this going again?
7               MR. MILLER:  I'm going to answer your
8     question directly, your Honor, and then I'm going to
9     request permission to go back to that prior period of
10    time.
11              THE COURT:  Okay.
12              MR. MILLER:  Prior to filing the motion, we
13    did reach out by e-mail to the Lewis Tein firm
14    reminding them again about the fact that we still did
15    not have compliance.  We got a very angry,
16    belligerent series of over the top e-mails.
17              We continued our efforts through and
18    including Friday, where we proposed, and, I mean,
19    I don't know whether your Honor is interested,
20    but we thought it was an eminently reasonable
21    resolution, but that wasn't the first -- I mean,
22    that -- yeah, that was not the first resolution
23    that we proposed in an effort to avoid this
24    hearing today, but the other thing, your
25    Honor ---

```
 1              THE COURT:  Wait, stop before you go --
 2              MR. MILLER:  Okay.
 3              THE COURT:  -- because you know me, if I
 4    don't ask this question, I'll forget it.
 5              MR. MILLER:  Okay.
 6              THE COURT:  Okay.  So what you're saying is
 7    even in advance of filing this motion, you reached
 8    out to the Lewis Tein firm, although maybe -- and
 9    Mr. Tein or whomever responded that -- or did not
10    respond, did not at that point file a motion for
11    protective order, did not at that point produce a
12    privilege log, and as a consequence of these over the
13    top e-mails, as you described them, you then filed
14    the motion.  Is that the correct understanding?
15              MR. MILLER:  The timing of filing the
16    motion, I believe, coincided with the first, as I'm
17    describing it, over the top response, your Honor.
18              THE COURT:  Okay.  Now you can go back to
19    last year.
20              MR. MILLER:  Thank you.  But prior to
21    filing the amended, and et cetera, et cetera,
22    continued efforts and continued dialogue to avoid
23    being in court today.
24              What I wanted to go back to, because
25    the story that they have told in the response is,
```

1   yes, there is was some activity, and then we sat

2   on our hands, so what's the big deal?  And to

3   that I say as follows:  First of all, there is an

4   e-mail attached to the response, and then there

5   were two that they didn't attach, so they tell a

6   somewhat incomplete story, but on 4/19/2010, and

7   I believe that is the one that is attached to the

8   e-mails in the response, and let me just -- here

9   we are, I think it's attached to our motion, not

10  to the response.

11           The 4/19 e-mail states that -- is one

12  where we e-mailed Lewis Tein and renewed our

13  request for the privilege log, and withheld

14  documents to avoid a motion to compel.

15           There is also an April 20, 2010 e-mail

16  from Mr. Tein, quote, "I will get you a privilege

17  log," and then there is a June 21, 2010 e-mail

18  from Mr. Tein, "We will provide privilege log

19  later this week."

20           So, your Honor, with the multiple

21  statements, we will, we will, we will, we don't

22  think that the law imposes upon the proponent of

23  discovery further reminders and further requests.

24  They knew that a privilege log was due, they

25  presumably know what a privilege log is, and even

1   at this very moment in time, your Honor, we

2   respectfully submit that that exhibit attached to

3   their response is not a privilege log because it

4   does not do what a privilege log is required to

5   do under the rules.

6          THE COURT:  Okay.  All right.  Thank you,

7   Mr. Miller.

8          All right.  Mr. Coffey.

9          MR. COFFEY:  Yeah, your Honor.  I am not

10  familiar with the document he just quoted, it's

11  really not part of the record before you.  He said it

12  was late June ---

13         THE COURT:  He, meaning, Mr. Miller?

14         MR. COFFEY:  He quoted some e-mail that he

15  said was ---

16         THE COURT:  I just want the record to be

17  clear that you're referring to Mr. Miller?

18         MR. COFFEY:  Yes, your Honor.  But here's

19  what happened, and it's unfortunate that this rather

20  significant legal issue has become engulfed in a bit

21  of stridency, and I think really the picture that was

22  presented to you of how Tein, Lewis Tein, has

23  responded, really wasn't fair.

24         For example, they flash very

25  prominently the, we will have to litigate thing

1    in their papers.  Judge, that was part of a whole

2    discussion of things that they would voluntarily

3    do at a time when it was unclear what was going

4    to go on with the waivers or not waivers in a

5    very serious criminal case.

6              In fact, the record actually shows that

7    they were very responsive.

8              THE COURT:  I'm going to interrupt you for

9    just a minute, Mr. Coffey.  You keep saying they, and

10   I think you're referring to --

11             MR. COFFEY:  That the firm --

12             THE COURT:  -- Lewis Tein --

13             MR. COFFEY:  -- I'll be more precise.

14             THE COURT:  -- and to the trustee.  So if

15   you could just, for the record, and to make sure that

16   I'm --

17             MR. COFFEY:  I will, your Honor.

18             THE COURT:  -- not misunderstanding.

19             MR. COFFEY:  The e-mail correspondence

20   shows that Lewis Tein was being very responsible,

21   they were.  They were producing everything, and then

22   it was requested -- on June 4th, an e-mail is sent by

23   Michael Tein, none of the stridency or adversity or

24   hostility that recently and unfortunately erupted

25   between the trustee and Lewis Tein, in which he gives

1    a very detailed set of cites, because -- and they

2    weren't trying to be patronizing, but there are many

3    that they do not know and do not recognize, because

4    they litigate in this kind of world all the time,

5    that an attorney has his or her own work product

6    right independently of the client, especially with so

7    called opinion work product.

8              And the law makes a somewhat meaningful

9    distinction between opinion work product, that's

10   the impressions, that's the ideas, good ideas,

11   crazy ideas, goofy notes, smart notes that we

12   write down, and the law says that has an

13   independent protection because we want attorneys

14   to be able to think and brainstorm freely.

15             And, in fact, some of the cases say

16   that the reason that is so important is it goes

17   beyond a single client.  Lewis Tein is not only

18   representing, as it did, Shapiro and Capitol

19   Investors, it applies to all of its clients and

20   in order that a law firm and attorneys can

21   represent in the right way, the old fashioned way

22   all of their clients, they need to have some

23   freedom of thought, and that means that opinion

24   work product has an independent protection.

25             We cited cases in that and I can talk

1   about that a bit.

2          THE COURT:  I reviewed those cases, but,

3   Mr. Coffey, it seems to me that we're not even at

4   that issue right now, the issue is waiver.  And so my

5   question is:  If, in fact, in June Mr. Tein said he

6   would produce a privilege log within the week, and

7   did not, and then when it was restarted -- so let's

8   put aside for a moment the pre-2011 conversations.

9          When this all started up again, why not

10  at that time did Mr. Tein not produce a privilege

11  log and file a motion for protective order, so

12  that rather than there being an intellectual

13  discussion, as scintillating as that might be,

14  why wasn't it brought before me in that way?

15          MR. COFFEY:  Well, I'm not familiar with

16  the late June e-mail they have alleged, that they

17  didn't copy on their papers, and I, with due respect,

18  object to the trustee raising a matter that wasn't

19  part of the papers because I honestly can't respond

20  to it.  I can't call the client and say, what

21  happened after that?

22          What I can say is in the papers before

23  you, the last document, an e-mail exchange, and

24  this is what I came prepared to argue, says very

25  clearly, from Tein to Freedman, if after

1    reviewing these opinions, you still believe you

2    are entitled to everything in our file, please

3    call me, so I can understand better why you may

4    believe your position withstands the above

5    authority.

6              In other words, they were doing exactly

7    what lawyers were supposed to be doing,

8    communicating, of course, informally, but not

9    burdening the Court with extra stuff.  And so to

10   extract from that, which is the end of the paper

11   trail as I have it, until we get to the beginning

12   of March, an intentional waiver of something that

13   Mr. Tein was obviously asserting very

14   appropriately, very compellingly, with the key

15   cases, going above and beyond what I think you

16   have to do to preserve a position, but doing it

17   the right way, so that, let's show our cards to

18   everybody.  We think the law says we have this

19   right.

20             I haven't seen an attempt by the

21   trustee, even now, to refute the applicability of

22   those cases.  They're relying heavily on waiver,

23   and what I think the record does show is, and

24   maybe there's an e-mail I don't know about,

25   again, I object to surprise e-mails that should

```
 1   have been part of the moving papers, but I do
 2   know one thing, the next thing that really shows
 3   up on this issue of the firm's independent right
 4   as counsel to assert work product, happens in
 5   March, and on March 4th, they get, you know, an
 6   A-bomb letter.
 7           THE COURT:  They?
 8           MR. COFFEY:  The law firm, Lewis Tein, gets
 9   an A-bomb letter demanding a whole lot of money, your
10   Honor has seen that letter, and of course they were
11   astonished.  The last comment they had with
12   Mr. Freedman, the trustee's counsel, back in late
13   May, was that they were not a target, although, in
14   fairness to Mr. Freedman, he said that, other than
15   complying with the obligation of analyzing sources of
16   payment, but they had last heard, not had any reason
17   to believe they were a target.
18           They then in March, not a phone call,
19   not even a fax or e-mail, a letter arrives in the
20   mail, a ten-day demand for a bunch of hundreds of
21   thousands of dollars, out of the blue, and
22   Lewis Tein, the law firm, reacts understandably,
23   somewhat forcefully, and they do suggest that
24   they think that that kind of threat and that kind
25   of demand and the proposed lawsuit the trustee
```

Page 18

1  says they're going to bring, they're going to

2  bring a lawsuit, out of the blue, could be

3  sanctionable, and that was really what revved up

4  this whole dispute that brought us here today.

5        They sent out more subpoenas, that's

6  fine.

7        THE COURT:  They meaning?

8        MR. COFFEY:  The trustee sent out more

9  subpoenas.  Mr. Tein and Mr. Lewis are available for

10  deposition on Monday.  They can ask and answer a lot

11  of questions, but what doesn't emerge from this

12  pattern that we've described is a waiver, a waiver

13  with respect to some failure to file a privilege log.

14        They responded to the discovery after

15  the case, basically, that they thought had been

16  simply a matter that had been resolved, been

17  sitting quietly for months, all of a sudden it's

18  a very aggressive demand.  They thought that the

19  matter had been essentially resolved and that

20  they had worked through the issues, and there

21  wasn't anything else that the trustee really

22  needed from them, up until the time the trustee

23  wrote a letter and said, yeah, I need hundreds of

24  thousands of dollars from you within ten days.  I

25  think the letter actually arrived like three or

1  four days before the due date.

2          So the parties unfortunately got into a

3  strident phase, unfortunately a very significant

4  legal issue about the protection that goes -- and

5  it applies, an attorney's independent protection

6  for opinion work product is sort of getting

7  clouded in this back and forth.

8          What I would suggest, your Honor, is

9  that there is no waiver, there is no intentional

10  waiver.  There's no evidence that the Lewis Tein

11  firm was dragging their heals, avoiding

12  compliance.  They produced over, I think close to

13  3,000 pages of stuff, and it is true that we

14  produced some additional materials 45 minutes

15  ago, and the reason is, and the firm was very --

16  the Tabas Freedman firm was very cooperative,

17  Lewis Tein simply didn't know what they already

18  produced.  They had not kept a set of everything

19  they had produced to the trustee.

20          I asked the Tabas Freedman firm to send

21  us a copy, so we would know what we produced.

22  They did.  We had determined that some materials

23  weren't produced, and they're materials that we

24  don't assert an opinion work product to, and that

25  compilation of papers, which does deals with

1    bills and costs and all that kind of thing, has

2    been turned over.  That kind of thing happens in

3    discovery compliance.  We obviously would have

4    preferred to have had this to them long ago.  We

5    thought it had been included in the past, but

6    thankfully that issue is behind us.  So all we're

7    really left with is attorney notes, attorney

8    notes and attorney impressions.

9              If Mr. Freedman and Mr. Miller contend

10   that that is not subject to an independent work

11   product as opinion work product, then we suggest

12   the cases utterly refute that, period, and that

13   this is a very important issue for attorneys.

14             If they suggest there might still be

15   some documents that haven't been produced, other

16   than essentially the attorney's notes that we're

17   talking about, internal e-mail and the like, then

18   they can and should ask specifically about those

19   questions during the deposition.

20             And your Honor has dealt with

21   situations before, if there are documents that

22   they fail to produce, they might have to come

23   back for another deposition.  My clients tell me

24   that as of February 2010, when the subpoena was

25   served, no such documents then existed in their

1   system, that whatever their document retention

2   system is, they simply didn't keep some category

3   of relatively unimportant internal e-mail, and

4   that's what they tell me.  Again, they're going

5   to be deposed next Monday, that can be asked

6   about.

7           So it really comes down to waiver.

8   Does it -- does it seem that an actual voluntary

9   waiver can be inferred from these circumstances?

10  I don't think so.  And if, in fact, the privilege

11  log were important, important enough to waive a

12  very fundamental right of a law firm, then I

13  suggest there would have been a good bit more

14  discussion and even some -- and I'm not saying

15  the burden is on them, but I'm just saying you're

16  to make what is essentially a determination, did

17  a waiver occur or not?

18          And I'm just suggesting to your Honor,

19  that in light of the clear position asserted by

20  the Lewis Tein firm in June, in light of all the

21  circumstances, including the rather modest at

22  best efforts to explore further into work product

23  until this situation developed, I'm just

24  suggesting there's no evidence of waiver.

25          They have provided what we believe to

Page 22

1    be an adequate privilege log.  If your Honor

2    finds that to be inadequate, we don't think it

3    is, then you can certainly summon greater detail

4    and direct us to recast it in a form that is more

5    appropriate.

6              THE COURT:  Well, what would you call an

7    adequate -- I mean, why do you believe that this is

8    an adequate privilege log?

9              MR. COFFEY:  Well, I think it is adequate.

10   That has been the contention of Mr. Miller, that it

11   is inadequate because it is general, but the essence

12   of it is that these are attorney notes.

13             And if you go -- if we go to the case

14   law, the case law strongly suggests that as a

15   general proposition, attorney notes are the core

16   of protected work product.  So I would suggest to

17   your Honor that that is probably good enough.

18             THE COURT:  All right.  So what you're

19   saying -- let's bifurcate it, and I'll go backwards.

20   So what you're saying is, that a privilege log that

21   identifies the name of the lawyer, the date of the

22   notes, how many pages they are, and that they're

23   either handwritten or typed notes, that is enough to

24   set forth the grounds for asserting a privilege?

25             MR. COFFEY:  It's prima facie enough,

1   Judge, and I would cite the cases, including the ones

2   that we have in our materials, In Re:  Green Grand

3   Jury Proceedings, an 8th Circuit decision, where they

4   make it clear that it's the notes, attorney notes,

5   even if they're about a witness, necessarily, and

6   just to use some language from the Court, focuses on

7   the fact that they deem legally significant.

8          And so notes are actually at the very

9   essence of protected opinion work product,

10  because what you're writing down is what you're

11  thinking about or what you think is important

12  about what you're witnessing, and in either case,

13  those kind of opinions and impressions captured

14  in notes are prima facie protected opinion work

15  product.

16         A similar related issue comes up with

17  FBI interview notes, and the courts have said

18  many times, you don't get the notes.  Those can

19  be impressions, those are protected.  You get the

20  typed interviews.

21         And I think in many contexts, your

22  Honor, the law sees notes, especially attorney

23  notes, as imbued with a prima facie opinion work

24  product privilege, which is an independent right

25  of the attorney, and is not waivable by the

Page 24

1    client, according to the cases we've cited.

2              THE COURT:  Okay.  Thank you.

3              MR. MILLER:  Your Honor, as far as this

4    explanation about the production that occurred 45

5    minutes ago, after a response has been filed in court

6    on Thursday, stating all documents requested pursuant

7    to the subpoena, other than the 46 pages have been

8    produced, first of all, the question about whether

9    they needed copies of what they produced to us are

10   not -- since they charged us for the photocopies of

11   those documents is questionable, but we gave them

12   those well over a week ago, I think two weeks ago,

13   but I can't be sure, but over a week ago.

14             For them to file a response on Thursday

15   saying, all documents, all right, where, you

16   know, the rules are there for a reason.  We

17   should not be in court here today.  The

18   argument -- a case they cited in their response

19   in opposition, Reits vs. City of Mt. Juliet,

20   (phonetic) 680 F. Supp 2d 888, stands for exactly

21   the proposition that I'm arguing to your Honor,

22   that we cannot tell whether the cases they cited

23   apply because the cases that are cited by Lewis

24   Tein in opposition to our motion to compel,

25   depend upon this being protected opinion work

1   product.

2          The case of Reits makes the

3   distinction, fact work product reflects

4   information received by the lawyer and it

5   receives less protection than the opinion work

6   product.  And in the Reits case, the lawyer had

7   to produce the fact work product, not the

8   opinion.

9          I don't know, and your Honor doesn't

10  know, anything about what was written in those

11  notes, the handwritten notes or the typed notes,

12  we don't know if it's a reflection of interviews

13  with witnesses or interviews with their own

14  client, we don't have that information.  That is

15  fact work product, not opinion work product, not

16  protected.

17         So once again, the fact that, you know,

18  we could -- your Honor, I mean, I'll represent as

19  an officer of the Court, the e-mails that I

20  represented exist, exist.  If we want to have an

21  evidentiary hearing because they're not willing

22  to acknowledge the existence of these e-mails,

23  certainly I didn't know the -- we didn't know you

24  really meant it until we got the response on

25  Thursday.  So as far as, you know, the record and

1    it being part of our moving papers, we're just

2    talking about more of the same.

3            One of the e-mails is attached to our

4    motion, the April one that I referenced, your

5    Honor, it's just the others afterwards.  But the

6    bottom line is, they have not, and they have a

7    burden to come forward and say why, even now, do

8    we not have an appropriate privilege log.

9            And we've heard only a response that's

10   strange credulity and still doesn't explain how

11   they could file a response on Thursday, well

12   after they had all of the documents, saying

13   everything was produced, or say, we don't know

14   yet, we're investigating.

15           Okay.  But the arrogance of coming to

16   court and saying this is ---

17           MR. COFFEY:  I'm going to object.  There's

18   been several personal cheap shots and it's not

19   necessary, we've got a real legal issue here.

20           MR. MILLER:  Well, okay, I withdraw the

21   adjective.  Your Honor, there is no serious legal

22   issue here because they did not preserve it.  Okay.

23           There could be an interesting legal

24   issue here over the difference between opinion

25   and fact, and whether or not the attorney, in

Page 27

1  fact -- because, you know, there are some

2  decisions going both ways, but we don't get there

3  and we don't need to get there because they

4  waived it by failing to preserve it even today,

5  and even after having been given notice on Friday

6  that it was defective and still coming and

7  insisting on proceeding.

8          THE COURT:  Okay.  In the future,

9  Mr. Coffey, at least in my courtroom, you can wait to

10  make that comment.  There's no jury here, you can

11  wait and then you can ask that I strike or disregard

12  any inappropriate comments made by opposing counsel.

13          MR. COFFEY:  I will, your Honor.  It was

14  not intended to appeal to a jury.

15          THE COURT:  No, I just ---

16          MR. COFFEY:  I was concerned, and I

17  apologize, your Honor, I was just concerned that this

18  whole thing has become needlessly strident, and I was

19  a little disappointed that Mr. Miller was trying to

20  further that unfortunate condition.

21          Judge, if I can just make one point,

22  and only one correction, because I do believe

23  that Mr. Miller has not had a chance, and I say

24  this respectfully, to look at the cases, but it

25  says right in the federal appellate decision ---

Page 28

1          THE COURT:  Give me the citation.

2          MR. COFFEY:  Yes, your Honor.  It's

3    492 F.3d 976, but he was suggesting -- he says

4    specifically that ---

5          THE COURT:  Who is he?

6          MR. COFFEY:  Mr. Miller said that notes of

7    a witness interview are fact work product.  And I was

8    suggesting to your Honor that actually those, you

9    know, notes broadly are opinion work product, and I

10   would just with apologies to your Honor, read from

11   the opinion at Page 982.  An attorney's notes of a

12   witness interview are opinion work product, opinion

13   work product, because when taking notes, an attorney

14   often focuses on those facts that she deems legally

15   significant.

16         This is prima facie opinion work

17   product, and to try to base much of this

18   important issue on an e-mail that came after the

19   last e-mail of file, the last e-mail of file --

20   on file before you is Mr. Tein articulating

21   specifically this very, somewhat uncommon, kind

22   of work product issue, and saying let me know if

23   you've got anything more to discuss on this.

24         That's the record that's before you,

25   and I would submit most humbly, your Honor, that

1   on that record there is no waiver.

2           THE COURT:  I don't know what has

3   precipitated this situation.  I'm going to assume

4   that the over the top e-mail that has been referenced

5   by Mr. Miller may have created some issues.  I can

6   understand, Mr. Coffey, that your clients might take

7   it personally that they're being asked to return

8   close to a million dollars or to justify it, but

9   that's the job of a bankruptcy trustee, that's what

10  they do.  They send demand letters, they ask for lots

11  of money, and then they file lawsuits because that's

12  what they're obligated to do.

13          And to the extent that you believe that

14  after your familiarization with bankruptcy law,

15  which I know is not your normal venue, you

16  believe that the trustee or his counsel have

17  somehow violated Rule 9011, then you obviously

18  are very familiar with the procedures that you

19  need to follow.  But in terms of sanctions, I'll

20  wait to hear that, if, at such time as any, that

21  that becomes appropriate.

22          Now, having said that -- Mr. Coffey.

23          MR. COFFEY:  Judge, I haven't suggested

24  that -- I haven't argued or asserted that Mr. Tabas,

25  who I have great respect for, has conducted himself

1   sanctionably.  I apologize for interrupting, I don't

2   interrupt judges, but I do not want your Honor to be

3   under that impression.

4           THE COURT:  Okay.  Well, then the next time

5   you say it's borderline sanctionable, maybe you

6   should think about it first.

7           But having said that, I think this is a

8   close call on a waiver issue.  I don't know about

9   that last e-mail, I have no reason to believe

10  that that last e-mail doesn't exist.  Mr. Miller

11  has appeared before me many times, I've also

12  litigated against Mr. Miller.  He may be a pain

13  in the butt sometimes, but he's never

14  misrepresented anything to me.

15          But having said that, I think that

16  neither side has acted with the utmost technical

17  elegance that the rules require.  And while I

18  know and respect Mr. Lewis and Mr. Tein, I also

19  know them both well enough to know that they know

20  what a privilege log is, and they know what a

21  motion for protective order is, but

22  notwithstanding that, I am not going to find that

23  there was a waiver.

24          I am going to find that your privilege

25  log is a little bit scant, but rather than

1  beating another piece of paper around, when you

2  take your depositions on Monday, or whenever it

3  is, Mr. Miller, you may question Mr. Tein or

4  Mr. Lewis, whoever is going to be appearing,

5  about a little more detail on the handwritten

6  notes.  If at that time you believe that the

7  privilege has been improperly asserted, then I

8  will do an in camera review, okay, otherwise that

9  can be resolved.

10          However, even though I am not going to

11  find waiver, Mr. Coffey, I am going to find that

12  it was because of your client's delay in acting

13  that Mr. Miller had to file this motion and come

14  here today, so your clients will be charged with

15  the cost of preparing the motion and attending

16  the hearing.

17          So, Mr. Miller, you send Mr. Coffey an

18  itemized bill of your time solely for the

19  preparation of the motion and appearing here, and

20  only for those costs.

21          Mr. Coffey, you review them.  If you

22  have no objection, your client is directed to pay

23  them.  If you do have an objection, then we'll

24  have a further hearing on reasonableness.

25          MR. MILLER:  Inquiry, your Honor, about the

1    deposition.  May I request as part of your order that

2    Lewis Tein be required to bring the documents with

3    him to the deposition so that they are available to

4    them to review for purposes of my questions, my

5    predicate questions?

6              THE COURT:  That will be up to Mr. Coffey

7    and how he prepares his witnesses.  I feel very

8    comfortable that to the extent that there's an issue

9    after your questioning, that Mr. Coffey will turn

10   over to me whatever appropriate documents for my

11   review.

12             MR. MILLER:  Only to the extent, your

13   Honor, that I may not have made myself clear, my

14   thinking was not about preserving, because I

15   understand Mr. Coffey ---

16             THE COURT:  No, no, about them asking the

17   questions, but Mr. Coffey is very experienced, a

18   former U.S. Attorney, he knows how to prepare his

19   witnesses.  If he wants his witnesses to have the

20   documents there, then he'll have them there; if not,

21   then they won't.

22             Mr. Coffey, you had something you

23   wanted to say?

24             MR. COFFEY:  Your Honor, I do want to

25   strenuously object to the assessments of fees and

1  costs.  This was a -- these were significant and

2  legitimate issues in my opinion.  This entire

3  discovery battle is as recent as the March 4th demand

4  and I don't think there's a basis on this record to

5  attribute delay.

6          The additional round of discovery was

7  actually borne from the Lewis Tein insistence

8  that the March 4th letter had not been

9  investigated, that then prompted the depositions

10  of Mr. Tein and Mr. Lewis, which are going

11  forward as scheduled on April 11th.

12          Simply stated, that record, the record

13  that is before you, does not establish any

14  dilatory conduct with respect to these matters,

15  and I would respectfully note our objection and

16  urge your Honor to withhold any judgment on

17  assessing fees and costs and reserve on that to

18  see how these depositions proceed.

19          THE COURT:  Well, I appreciate your

20  comments, Mr. Coffey, and they're noted.  If after

21  you go back and you look at the e-mail, the June

22  e-mail, which your client said he would produce a

23  privilege log within a week and then never did so,

24  does not exist, then you may come back and ask for

25  reconsideration.

1          You got your finding of non-waiver, but

2    your client doesn't get away with not doing what

3    they promised to do, even though the trustee

4    didn't act until March, and that's the way I

5    feel.

6          But if you don't believe that e-mail

7    exists, or after you read it, it doesn't read the

8    way Mr. Miller reads it and you want to file a

9    motion for reconsideration, I'll consider it at

10   that time.

11        MR. COFFEY:  Thank you, your Honor.

12        THE COURT:  All right.  Thank you,

13   gentlemen.

14        Have a good day.

15        MR. MILLER:  I'm not sure who you --

16   whether you directed either of us ---

17        THE COURT:  Well, you know, you prepare

18   the other granting your motion to compel in part

19   and denying in part, and share it with Mr. Coffey,

20   and in granting the sanctions, limit it as I set

21   forth.

22        MR. MILLER:  I understand.  Thank you.

23        THE COURT:  Remember, as you know,

24   Mr. Miller, I don't need a whole rehash for today's

25   hearing, just for the reasons stated on the record.

Page 35

1    Okay.

2            MR. MILLER:  Understood.

3            THE COURT:  Okay.  Thank you.

4            MR. COFFEY:  Thank you, your Honor.

5            THE COURT:  Thank you, Mr. Coffey.

6            (Thereupon, the hearing was concluded.)

7

8                    - - - - - -

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 36

1

2                          CERTIFICATION

3

4    STATE OF FLORIDA:

5    COUNTY  OF  DADE:

6

7              I, Margaret  Franzen,  Shorthand Reporter

8    and  Notary  Public in  and for the State of Florida

9    at  Large,  do  hereby  certify  that  the  foregoing

10   proceedings  were  taken  before  me  at the date and

11   place  as  stated  in  the caption hereto on  Page 1;

12   that the  foregoing  computer-aided transcription  is

13   a true record of my  stenographic notes taken at said

14   proceedings.

15              WITNESS  my  hand  this  7th  day  of

16   April, 2014.

17

18

19        _____

              Margaret  Franzen

20          Court Reporter and Notary Public

          in and for the State of Florida at Large

21        My Commission Expires:  April 14, 2014

22

23

24

25