Page 1

1          UNITED STATES BANKRUPTCY COURT
          SOUTHERN DISTRICT OF FLORIDA
2

                              CASE NO.: 09-36408-BKC-LMI
3

IN RE:
4

CAPITOL INVESTMENTS USA, INC.,
5

          Debtor.
6  _____/

7


8

  MOTION TO QUASH BANK OF AMERICA, N.A.'S MOTION TO QUASH AND
9  MOTION FOR A PROTECTIVE ORDER IN CONNECTION WITH ROBERT J.
          KALLMAN'S DISCOVERY REQUESTS (2476)
10
                    JULY 23, 2012
11

12        The above-entitled cause came on for hearing before

13  the HONORABLE LAUREL MYERSON ISICOFF, one of the Judges

14  sitting in the UNITED STATES BANKRUPTCY COURT, in and for the

15  SOUTHERN DISTRICT OF FLORIDA, at 51 Southwest 1st Avenue,

16  Miami, Dade County, Florida on Monday, July 23, 2012,

17  commencing at or about 1:30 p.m., and the following

18  proceedings were had:

19

20

21

22

23

24                    Reported By:  Maggie Rubio, RPR

25

Page 2

1                          APPEARANCES:

2     TABAS, FREEDMAN, SOLOFF, MILLER & BROWN, P.A., by
                  GARY M. FREEDMAN, ESQUIRE
3                 ANDREA L. RIGALI, ESQUIRE
              14 Northeast First Avenue, Penthouse
4                    Miami, Florida  33132
                  on behalf of the Trustee

5

                     PAUL L. ORSHAN, P.A., by
6                    PAUL L. ORSHAN, ESQUIRE
              150 Alhambra Circle, Suite 1150
7             Coral Gables, Florida  33134
              on behalf of Robert J. Kallman

8

              LIEBLER, GONZALEZ & PORTUONDO, by
9               J. RANDOLPH LIEBLER, ESQUIRE
                  MIGUEL M. CORDANO, ESQUIRE
10           44 West Flagler Street, 25th Floor
                    Miami, Florida 33130
11                on behalf of Bank of America

12

13                      _ _ _ _ _ _ _

14

15

16

17

18

19

20

21

22

23

24

25

Page 3

1    (Thereupon, the following proceedings were had:)

2          THE COURT:  Capitol Investments, 09-36408.  I'll take

3    appearances.

4          MR. LIEBLER:  Good morning, Your Honor.  Randy

5    Liebler and Miguel Cordano on behalf of Bank of America.

6          MR. ORSHAN:  May it please the Court.  Good

7    afternoon, Your Honor.  Paul Orshan for Robert Kallman and

8    various investment companies.

9          MR. FREEDMAN:  Good morning, Your Honor.  Gary

10   Freedman and Andrea Rigali on behalf of Joel Tabas, the

11   Chapter 7 trustee.

12         THE COURT:  Okay.  Mr. Liebler, this is your motion.

13   I've reviewed it, but please feel free to add anything or

14   highlight anything that was in your motion.

15         MR. LIEBLER:  Before I start, if I slur or I stumble

16   on my words, I had a root canal this morning.  It's not that I

17   went out and had a three-martini lunch, so -- I probably

18   should have done both.

19         THE COURT:  No, root canals are good if you know a

20   good -- a good endodontist.  Okay.  Do your best.

21         MR. LIEBLER:  So, preliminarily, Your Honor, we're,

22   obviously, here on Bank of America's motion for protective

23   order.  It was filed in an abundance of caution because in our

24   view there is no effective or timely discovery that was served

25   on the bank.

1        Having said that, I'd like to give the Court an

2    overview of the time line of the -- both the punitive claim

3    that Kallman objects -- prospective objectors have in the

4    course of proceedings.

5        THE COURT:  You mean -- you're talking about the

6    credit check claim?

7        MR. LIEBLER:  Right.  Right.  So, the conversation

8    that gives rise to the punitive claim occurred, we believe,

9    from what we've seen, in 2002, roughly 10 years ago.

10   Mr. Kallman and his related entities entered into a business

11   transaction with Capitol, had a dispute, a lawsuit that was

12   settled in 2006, six years ago today.  Roughly six years ago.

13       THE COURT:  Lawsuit against whom?

14       MR. LIEBLER:  Between the Kallman entities and

15   Capitol.

16       THE COURT:  Okay.

17       MR. LIEBLER:  The petition in this case was, of

18   course, filed almost three years ago.  Bank of America was

19   obviously -- was brought in by subpoena and has pre-suit

20   entered into a tentative settlement with the trustee.  The

21   motion to approve that settlement was filed May 3rd of this

22   year.  The Court's order setting the hearing that will occur

23   next week was entered May 23 of this year.  In that order the

24   Court expressly held that no continuance for any reason absent

25   extraordinary unforeseen circumstances would be granted and

1    that discovery should be complete seven days before the

2    hearing, which is today.

3           On June 26th, the trustee commenced an adversary

4    complaint against Kallman and his affiliated entities and on

5    July 9th, roughly two months after the order, Bank of

6    America's counsel received, after hours, by e-mail, a request

7    for production of documents.

8           Now, that was the first indicia or indication or

9    notice of any kind that Mr. Kallman had some punitive claim

10   and it was asserted or basically evidenced 10 years after the

11   incident that appears to give rise to the underlying issues.

12          On July 13th, there was -- after the discovery

13   cutoff, a Rule 2004 deposition noticed without subpoena of a

14   former employee of Bank of America, Jorge Del Rio, and a

15   notice of a corporate designee deposition.

16          THE COURT:  All right.  But you don't represent

17   Mr. Ramos -- I mean, Mr. Rio, correct?

18          MR. LIEBLER:  Not at this moment, on that issue, and

19   we've never indicated that we have authority to accept service

20   of that subpoena.

21          Now, Your Honor, what we see in objections to bar

22   orders and class action is often enough -- I don't want to be

23   overly critical, but often there are attempts to sort of root

24   out some chestnuts for the objectors.  Usually it's money.  In

25   this case, it's pretty obvious that we're -- we see an effort

1   to leverage -- gain some leverage over the trustee on the

2   adversary because that's what prompted this claim.

3          The order was entered two months before the

4   discovery -- any discovery was asserted and the coincidence is

5   compelling.  The scope of discovery related to approvement --

6   to approval of a settlement or a bar order is narrow.

7          In this case, the discovery that is being sought is

8   very broad and very intrusive and appears to attempt to engage

9   in pre-litigation discovery, which would be improper.

10         The Court need not conduct a mini-trial when

11  approving a settlement.  We cited the case of Purofied Down

12  Products in our brief.  The purpose of considering evidence in

13  connection with a proposed settlement or bar order is to

14  determine whether the bar order was an integral part -- was

15  integral to the settlement.  In other words, the beneficiary

16  of the bar order would not have entered the settlement without

17  the bar order and whether it is fair and equitable under the

18  circumstances.

19         Moreover, a great deal of the discovery goes right to

20  the heart of the mediation privilege and would in no event be

21  discoverable.

22         Most of all, Your Honor, the discovery sought is not

23  necessary.  Mr. Kallman is going to come here on Monday, or

24  not, and tell you under oath what his potential claim is.

25  Whether Bank of America can bring in evidence at that time to

1    dispute it or to agree with it or indicate that we don't have

2    any records indicating one way or the other isn't dispositive.

3    It's not the purpose of the settlement hearing, the approval

4    hearing, to get to the merits of what Mr. Kallman says he may

5    or may not have.  The point is to determine whether or not the

6    settlement as a whole is fair and equitable and consider the

7    impact of a denial of the bar order on the settlement and the

8    benefits to the creditors in this case.

9           So, discovery itself is quite burdensome.  I would

10   point out that Bank of America is not a creditor of the

11   estate, it is not a defendant in an active lawsuit and it

12   should not be subject to merits-based discovery.  If

13   Mr. Kallman has a claim, he should be able to specify it under

14   Twombly Rule and Rule 11 and support it.  He doesn't have to

15   establish and prove it to any great degree of certainty, but

16   certainly he has to have the facts necessary to establish that

17   he has a claim at this point.  As Judge King pointed out and

18   we cited the checking account overdraft litigation, objectors

19   aren't -- to settlements aren't entitled to engage in a

20   fishing expedition.

21          The documents requested include all of the documents

22   that Bank of America provided to the trustee in response to a

23   subpoena.  This is an exceptionally -- we had a lot of

24   discussions about this, you know, the subpoena responses.

25   They were very intrusive in our opinion against the bank.

1    They involved a lot of confidential information and documents,

2    third-party financial records and the like; and so, this is a

3    very, very broad request.  It does not indicate -- by just

4    saying give me everything that you gave to the trustee, it

5    doesn't indicate why they need that.  It doesn't indicate any

6    subject matter of documents.  It's just give me everything

7    that you have.

8            THE COURT:  All right.  Before I -- so, you're saying

9    the Kallmans are not creditors in this estate?

10           MR. LIEBLER:  Well, I think that that's true.

11           THE COURT:  They never filed a proof of claim?

12           MR. LIEBLER:  And neither is Bank of America.

13           THE COURT:  No, no, that I know.  Mr. Cordano and I

14   spend a lot of time together.  Right, Mr. Cordano?  And

15   Ms. Rigali and what's-his-face once in a while.

16           Okay.  Okay.  So, you're saying that the discovery is

17   very, very broad and really the focus has to be -- well, you

18   didn't say it, but it's Justice Oaks' integral -- and then the

19   bar order, integral settlement, fair and equitable under

20   Munford.

21           MR. LIEBLER:  Correct.

22           THE COURT:  Okay.  So, what else?

23           MR. LIEBLER:  Well, I can go through the specifics.

24   I think you've read them, but all of them, I think, are merits

25   based and just don't add anything to what the -- Mr. Kallman's

1  burden will be on Monday.  Thank you.

2         THE COURT:  Okay.  Thank you.  Okay.  Mr. Orshan.

3         MR. ORSHAN:  May it please the Court.  Good

4  afternoon, Your Honor.

5         THE COURT:  You agree that your client is not a

6  creditor in the estate?

7         MR. ORSHAN:  That's a really good question.

8         THE COURT:  Did your client file a claim?

9         MR. ORSHAN:  Did not; and if we're not a creditor,

10  we're not a barred person because the bar order, appears to

11  me, the language I read, to only bar creditors.

12         So, quite frankly, I had discussions with

13  Mr. Freedman about that issue.  I did everything I could to be

14  as reasonable as possible and not getting involved in the

15  settlement and coming before the Court.

16         The trustee's initial position with me was that my

17  client was not a barred person because they were not listed on

18  Exhibit A to the stipulation between Bank of America and the

19  trustee.  I think Mr. Freedman will now tell you that his

20  position on that was that there's no due process for people

21  not listed.  Now we know about it.  So, now, maybe we are a

22  barred person, but he was kind of waiting for Bank of America

23  to opine on that issue.  I could not get an answer from Bank

24  of America's New York counsel on that question until last

25  Wednesday.  I asked them on numerous occasions, what is your

1   position on whether or not my client is a barred person, we're

2   spinning our wheels on issues that may be irrelevant, if you

3   agree that we're not a barred person, and they then told me

4   that they believe we are a barred person.  So, I'm a little

5   confused.

6           THE COURT:  Okay.  Well, I didn't ask you because of

7   the -- whether or not you fall into the category of barred

8   person because as you and I both know, as well as everybody

9   here, you can be a barred person and not be a creditor.

10  That's just a function of the defined term in the agreement

11  and I can take a look at that.

12          MR. ORSHAN:  Right.

13          THE COURT:  But if you're not a creditor, then the

14  only standing that you would have is with respect to being a

15  barred person and that means that the only issue that you

16  would have regarding discovery would be with respect to the

17  bar order, correct?

18          MR. ORSHAN:  That's correct.

19          THE COURT:  Okay.

20          MR. ORSHAN:  And our only issue is with the bar

21  order.  We are not ---

22          THE COURT:  Okay.  But there's no question in my

23  mind, although I'm open to you trying to explain to me the

24  contrary, that a lot of what you asked for has absolutely

25  nothing to do with the bar order.  It has to do with whether

1   under Justice Oaks the trustee made a valid exercise of his

2   business judgment in accepting the settlement.  So, with

3   respect to anything that you have asked, even if the timing

4   weren't troubling and even if the procedure weren't

5   problematic, anything that is unrelated to the bar order

6   itself, unless you can explain to me why otherwise, would not

7   be an appropriate area of inquiry because your client is not a

8   creditor.

9        MR. ORSHAN:  I agree with you and I made attempts to

10  try to speak with Bank of America's counsel about limiting

11  that discovery and what we were looking for.  I was not able

12  to get them to respond to those requests.

13          I'd like to talk to you about the timing for just a

14  minute, if I may.  Yes, it is true the motion to approve the

15  settlement was filed a couple of months ago; however, until my

16  client was sued by the trustee my client, quite frankly,

17  didn't care about the settlement with Bank of America nor the

18  bar order.  We were just sued on June 26th, served on July

19  2nd.  My client retained me that week.  I jumped as quickly as

20  I could to contact Mr. Freedman, put calls in to Mr. King up

21  in New York.  It is true that the request for them to accept

22  service of a request for production was slightly after five

23  o'clock on that Monday two weeks ago; however, I put calls in

24  to Mr. King that day that were not answered.  I made attempts

25  to be as reasonable as I could.  Again, Judge, I was not

1   trying to come in and muck up the works and make a lot of work

2   for everyone.  I was just trying to get a little information.

3          I do think, though, that if our issue is with regard

4   to the bar order, we certainly are entitled to, I think -- and

5   today is the first time I actually heard from Bank of

6   America's counsel some acknowledgment that these conversations

7   that we allege took place took place because he referred to

8   the conversations.  All the indications I have gotten from

9   BOA's counsel is that they're not even sure these

10  conversations took place.

11         So, our position is, and it's no secret, we discussed

12  it with both Bank of America and Mr. Freedman and Ms. Rigali,

13  that my client's claim is two-fold.  One is that my client had

14  direct, specific meetings with Mr. Shapiro and Mr. Del Rio as

15  a representative of Bank of America where Mr. Del Rio gave

16  specific, positive credit references on behalf of Capitol and

17  Mr. Shapiro at a time that we -- at a time when we believe

18  Bank of America possessed what we call red flag information or

19  negative information about their client.

20         There is case law that provides that a bank can have

21  liability for giving a positive credit reference if they have

22  that type of negative information at that disposal.  So,

23  when ---

24         THE COURT:  Well, I'm not going to go into the merits

25  of that today ---

1        MR. ORSHAN:  Understood.

2        THE COURT:  -- although I will say that I just read

3    in either Friday's or today's Daily Business Review an entire

4    article on that subject that notes the fact that bank -- that

5    courts are holding, including the Eleventh Circuit, that that

6    fact by itself is not adequate to state a cause of action, but

7    that's not the issue --

8        MR. ORSHAN:  Understood.

9        THE COURT:  -- before me.

10       MR. ORSHAN:  Understood.

11       THE COURT:  All right.  So, if in fact -- so, you are

12   asking me to give you an advisory opinion as to whether or not

13   the following definition means that your client is or is not

14   included and let me -- I'm looking now at the settlement

15   agreement itself.

16       MR. ORSHAN:  And before you look, Your Honor, may I

17   raise one other point about that particular issue --

18       THE COURT:  Absolutely.

19       MR. ORSHAN:  -- because my confusion about that

20   issue, in the way the agreement was drafted, is not just, are

21   we a creditor now; what if we become a creditor later?

22       THE COURT:  Okay.  So, then that's why ---

23       MR. ORSHAN:  Because we have an issue ---

24       THE COURT:  That's why I haven't said the hearing is

25   over, have a nice day, see you next Monday.  Okay.

1       MR. ORSHAN:  Understood.  Because, obviously, if

2  Mr. Freedman -- not Mr. Freedman, the trustee has sued my

3  client and his company.  If Mr. Freedman successfully brings

4  an action against my client and gets a judgment against my

5  client and my client's defense to that claim in that

6  litigation is that my client may be owed money from actions

7  taken by Mr. Shapiro, does that then make us a creditor at

8  that point even though we've never filed a proof of claim for

9  any such thing?  I'm not sure -- I'm asking -- honestly, I'm

10 not sure of the answer to that.  So, I was a little confused

11 when I read the agreement as to -- it appears to limit barred

12 persons to creditors; and so, I guess maybe we're spending a

13 lot of time on something that really doesn't matter.

14      I will tell you, Bank of America -- and I have to --

15 I just want to make sure we're all clear.  Mr. King, who I

16 spoke with, told me directly that he believes my client would

17 be a barred person under the order.  I'm trying to understand

18 what that means and how that comes into play because it,

19 obviously, has a great effect on what we end up doing before

20 Your Honor on Monday.

21      THE COURT:  All right.  Well, I have another question

22 for you.  What is it about being sued by the trustee that all

23 of the sudden transferred your client's lack of interest to

24 the position that you're in today?

25      MR. ORSHAN:  Because if the trustee is successful in

1   bringing a claim against my client, my client believes it has

2   a direct claim against Bank of America for any damages that my

3   client ends up having to pay to the trustee plus additional

4   damages against Bank of America.  There's a particular

5   transaction that took place.  Mr. Freedman is aware of it,

6   Ms. Rigali, where there was a wire transfer of funds from

7   Mr. Shapiro to my client, back to a third party who was later

8   arrested and admitted that Mr. Shapiro induced him to return

9   that money directly to Mr. Shapiro.  So, what happened was

10  there was a wire from Shapiro to Kallman, to this third party,

11  back to Mr. Shapiro, all within a matter of minutes and we

12  think that there were enough red flags in the file, and what

13  had happened in this case, the Bank of America knew or should

14  have known that Mr. Shapiro was involved in duping my client

15  directly.  They were all Bank of America transfers.

16          THE COURT:  Okay.  And this is in 2002?

17          MR. ORSHAN:  I believe that's right.

18          THE COURT:  Okay.  And your client sued Mr. Shapiro.

19  I just want to confirm that your thought -- your understanding

20  of the facts are the same as Mr. Liebler's.

21          MR. ORSHAN:  Judge, honest, I don't know anything

22  about that litigation.  I can't -- I'm not going to speak

23  about it.  I'm not familiar with it.

24          THE COURT:  So, your position is that until four

25  years at the latest was -- a fraud is two years?  Your cause

1  of action, the statute of limitations would be what?

2          MR. ORSHAN:  Fraud cause of action I believe is two

3  years.  Correct.

4          THE COURT:  And that's essentially what you're

5  saying, fraud?

6          MR. ORSHAN:  Yes.

7          THE COURT:  Okay.  So, you're saying that until two

8  years ago your client neither knew nor should have known about

9  this?

10          MR. ORSHAN:  No, but there was nothing to bring a

11  claim about because they -- my client wasn't being pursued for

12  any of those monies until Mr. Freedman brought the action

13  against my client on June 26th of this year.

14          THE COURT:  Okay.  Okay.  So, let -- so, let's

15  pretend for a moment, let's, for purposes of discussion, since

16  everybody is here, that your client might fall into the

17  category of barred person, although I'm not sure that's the

18  case, but let's just say for purposes of this.

19          So, your position is that your client may have an

20  independent action against Bank of America?

21          MR. ORSHAN:  Yes.

22          THE COURT:  Separate and apart from any cause of

23  action that the estate could have against Bank of America?

24          MR. ORSHAN:  Yes.  We believe -- I believe -- we

25  believe that my client has a direct claim against Bank of

1    America against what I said a moment ago and I know you said

2    you read articles that may not be applicable, but I'm not

3    familiar with those particular articles, that they may have

4    liability for giving positive, glowing credit references and

5    information about Mr. Shapiro and Capitol directly to my

6    client, directly from their representative at a time when they

7    had enough red flags in the file to know that they should not

8    have been giving -- been giving positive credit references on

9    behalf of Mr. Shapiro or Capitol at that time.

10         THE COURT:  Okay.  So, as I understand it, your

11   position is that the nature of your client's cause of action

12   at the bank did not accrue because there are damages that

13   would be associated directly with the cause of action that the

14   estate is bringing against your clients?

15         MR. ORSHAN:  Yes.

16         THE COURT:  Okay.

17         MR. ORSHAN:  That's correct.

18         THE COURT:  So, my question is:  Assuming again that

19   your client falls within the definition of barred person,

20   there is a section in the settlement agreement that says that

21   any judgment that may be obtained by or on behalf of the

22   trustee against any barred person as to which such barred

23   person has proven a legal entitlement to reduction or setoff

24   by virtue of the conduct of any Bank of America released

25   party, and then it goes on to show that that cause of auction

1    would be reduced.

2              MR. ORSHAN:  Correct.

3              THE COURT:  Okay.  So, are you saying that that

4    doesn't address -- assuming, once again, if your client is a

5    barred person, if they aren't otherwise precluded by the

6    statute of limitations, if they -- you know, blah, blah, blah,

7    blah, blah, blah.  You're saying that that paragraph does not

8    protect your client; and if it doesn't, explain to me why.

9              MR. ORSHAN:  Well, again ---

10             THE COURT:  And, again, I know we're just talking

11   about discovery today --

12             MR. ORSHAN:  I understand.

13             THE COURT:  -- but the whole issue, assuming you get

14   past the timing and the procedure, is whether there's any

15   purpose to the discovery that you're seeking.

16             MR. ORSHAN:  Understood.

17             THE COURT:  And that's what I'm trying to understand.

18             MR. ORSHAN:  Judge, I read that and although I saw it

19   actually in the motion, I didn't actually see it in the

20   stipulation, I assume it's in there somewhere.

21             THE COURT:  I'm looking at Paragraph 4(f) of the

22   stipulation itself, which is Page --

23             MR. ORSHAN:  I have it.

24             THE COURT:  -- 14 of 28.

25             MR. ORSHAN:  I hate to answer a question with a

1   question, particularly in court.  I know it's not appropriate

2   to do that, but, again, this was the second area of confusion

3   I had from this agreement.  It may be it's just my lack of

4   knowledge and I readily admit that that's possible.

5           If my client has been sued by the trustee and one of

6   our defenses is these actions by Bank of America and its

7   representatives, if we're a barred person, I'm not sure how we

8   raise that.  If this says we're entitled to show a setoff or

9   entitled to a setoff for anything we can prove, I'm not sure

10  how we prove that if we can't pursue Bank of America.  Putting

11  aside today's discovery with regard to the bar order, what we

12  would normally do is we would have to bring a third-party

13  complaint in that action against Bank of America and say, we

14  believe you have liability to us -- or liability to the

15  trustee; and moreover, Judge, we think that we have additional

16  damages that may be due to us from Bank of America in addition

17  to having a setoff from the trustee and that if we're barred,

18  how do I prove that?

19          THE COURT:  Okay.  Well, I'm not going to address

20  that today.  So --

21          MR. ORSHAN:  Okay.

22          THE COURT:  -- let me ask you this:  Your discovery,

23  now we've gotten rid of a whole chunk of it.

24          MR. ORSHAN:  Yes.

25          THE COURT:  Since you're not a creditor, you can't do

Page 20

1    the fair and equitable ---

2              MR. ORSHAN:  I'll tell you what I'm looking for.

3              THE COURT:  Well, but what I want to understand is

4    why, why do you need that discovery -- let's assume that for

5    purposes of next Monday the issue is do you have a plausible

6    cause of action, meaning, Mr. Liebler says he understands

7    conversations did take place in 2002.

8              MR. ORSHAN:  That's a big start because that's the

9    first I've heard of that today.

10             THE COURT:  Okay.  Okay.  But we start there.  Okay?

11             Then the issue is, it seems, that the focus is just

12   going to be, assuming that that were the case, would you have

13   a direct cause of action that isn't adequately addressed by

14   Paragraph 4(f).

15             So, what discovery do you need, assuming we get past

16   timing and procedure, that would not be -- that you would need

17   by next Monday in order to make that argument?  Because that's

18   really what we're talking about.

19             MR. ORSHAN:  Yes.

20             THE COURT:  You have to have this and I need to

21   understand why you have to have it.

22             MR. ORSHAN:  Well, first of all, I do not want to

23   come here on Monday and have Mr. Del Rio appear and say these

24   conversations never took place.

25             THE COURT:  Well ---

1          MR. ORSHAN:  Because that would be a problem for me.

2          THE COURT:  Okay.  Well, Mr. Del Rio is out of the

3    money because you never served him.  So, that's not an issue.

4    You're going to have to take your chances with whatever

5    Mr. Del Rio says.

6          MR. ORSHAN:  Okay.

7          THE COURT:  If Mr. Del Rio comes back Monday.

8          MR. ORSHAN:  On top of his counsel standing up today

9    and saying conversations took place?

10         THE COURT:  Not his counsel.

11         MR. ORSHAN:  Okay.

12         THE COURT:  Bank of America's counsel.  Unt-huh,

13   unt-huh.  You'll have your turn, Mr. Liebler.

14         MR. ORSHAN:  We think we're entitled to the see the

15   draft complaint the trustee filed against Bank of America.

16         THE COURT:  Why?

17         MR. ORSHAN:  Because I think it will contain

18   information about what the trustee believed Bank of America

19   knew or should have known at certain times during the course

20   of this litigation to show whether or not Bank of America had

21   those red flags.

22         Judge, obviously, I can stand up on Monday and have

23   my client here and he can testify that he had certain

24   conversations and this is what he was told.

25         THE COURT:  Okay.  But what I'm saying, Mr. Orshan,

1    I'm not going to try your case or your alleged case against

2    the bank on Monday.  That's not what Monday is for.  The

3    question is:  Assuming that that is true, that there was this

4    conversation, because now we've gotten past that, and I

5    understand you're saying that's the first you've heard that

6    the bank acknowledges there was some conversation of some kind

7    maybe --

8            MR. ORSHAN:  Right.

9            THE COURT:  -- okay, whether nonetheless it should be

10   barred under the Munford and U.S. Oil criteria.  Okay.  I'm

11   very familiar with the case law in this area.

12           MR. ORSHAN:  I know you are.  I've read your

13   decision.

14           THE COURT:  And interestingly enough, I just had to

15   do some work over the weekend on a presentation on making the

16   talks about this very issue.  So, this is super fresh in my

17   mind today.  Okay?

18           MR. ORSHAN:  I'll be listening intently to that

19   presentation, I'm sure.

20           THE COURT:  I don't know if you'll be there, but the

21   bottom line is -- the bottom line is, what I need to

22   understand is what discovery and you have not -- I appreciate

23   that you're trying to tell me, but I still have not heard, I'm

24   being honest with you, anything that you have shared with me,

25   assuming you get past the timing and procedural problems, that

1   helps me understand what information you need for Monday.

2           MR. ORSHAN:  Well, I would think the Court would want

3   to know if Bank of America was in possession at the time of

4   these meetings of negative information about Capitol and

5   Mr. Shapiro and nonetheless its representative gave positive

6   information to someone who was induced into investing.  If the

7   Court doesn't want to know that, then I guess I don't need it.

8           THE COURT:  Okay.

9           MR. ORSHAN:  Because that supports my claim.  Again,

10  my claim is two-fold.  These were -- conversations took place

11  and this is what was said.  Quite frankly, I can have a

12  conversation with Mr. Freedman and, you know, we agreed to

13  provide an affidavit by Thursday, as Your Honor is well aware

14  from the matter we settled last Friday or Thursday, laying out

15  what our claim is.  If Your Honor does not need to hear the

16  additional information about what Bank of America knew or

17  should have known around those times and you believe you can

18  make that decision about whether we have a specific, unique

19  claim that should not be barred, putting aside the issue of

20  whether we're a creditor, then I guess we don't need it.

21          THE COURT:  Well, since I don't know what the nature

22  of your claims is -- that was very bad -- what your claims

23  are, what the nature -- whatever, I can't tell you that, but I

24  still -- I'm not going to try your claim on Monday, but --

25  okay, anything else, Mr. Orshan?

1        MR. ORSHAN:  Is Your Honor going to consider -- I'm

2   just asking.  Is Your Honor going to consider, as I saw that

3   you did in the Solar -- I think it's the Solar case.  You at

4   one point asked the party that was objecting to file some

5   memorandum with the court detailing what their claim was and

6   had the other parties that were seeking to have it barred file

7   some kind of memorandum opposing that and then you considered

8   that at a later date.  Are you considering something like that

9   or are you simply going to make this just ---

10       THE COURT:  Well, I'll need to see what happens on

11  Monday.  In the Solar case, Mr. Orshan, I had a party come in

12  here and articulate without citing to any law or fact that

13  they might have independent claims, and so ---

14       MR. ORSHAN:  Understood.

15       THE COURT:  Maybe I was having a good day, but the

16  bottom line is I gave him a chance to do that.

17       MR. ORSHAN:  Okay.

18       THE COURT:  All right.  You, obviously, have looked

19  into that; and so, in terms of being able to articulate a

20  legal theory for your claims, you've done that.

21       MR. ORSHAN:  Okay.

22       THE COURT:  Or you will be doing that on Monday.

23       MR. ORSHAN:  Right.

24       THE COURT:  So -- okay.  So ---

25       MR. ORSHAN:  And you're not going to hear much more

1  than you heard today because we've previewed what it is and we

2  told you what it is and we've told them what it is, so ---

3       THE COURT:  Well, I'm sure you'll have citation to

4  law on Monday.

5       MR. ORSHAN:  I'm sure there will be a little more

6  than I presented today.

7       THE COURT:  Okay.  All right.  Anything else?

8       MR. ORSHAN:  No.  Thank you.

9       THE COURT:  Mr. Freedman, do you want to participate

10  as a friend of the Court?  Is that what you want to do?

11       MR. ORSHAN:  Well, actually, Judge, Mr. Freedman's

12  office filed a joinder the motion to --

13       THE COURT:  I didn't see that.

14       MR. ORSHAN:  I'm not sure why because it wasn't --

15  discovery not directed to them.  We had resolved their

16  discovery.  I'm not sure why they have an opinion on this.

17       THE COURT:  Okay.  Well, I'll let him talk as a

18  friend of the Court; how's that?

19       All right, Mr. Freedman.  Solely as a friend, talk to

20  me.

21       MR. FREEDMAN:  Thank you.  One of the things that

22  Mr. Orshan told the Court and I want to emphasize it because

23  Mr. Kallman testified to it as well, the fact is that

24  Mr. Kallman has always asserted a claim against either

25  Mr. Shapiro or Capitol Investments arising out of an alleged

1    theft that occurred in 2006 of a million dollars.

2         So, Mr. Kallman is not just some new party to Nevin

3    Shapiro or Capitol Investments and was sitting on the

4    sidelines not aware that it had a claim until the trustee

5    filed its complaint -- its complaint on June 26 and I think a

6    further chronologically would be helpful to the Court because

7    back in September of 2011 is the first time that my client,

8    the trustee, made a demand upon Mr. Kallman.  It was in

9    November 2011, two months later, that we provided Mr. Kallman,

10   who is counsel, a draft copy of the complaint in material

11   form, the same material form in which it was filed on June 26.

12   We then went to mediation in the spring of 2012 and reached a

13   mediation impasse on May 14, 2012, where we made it explicitly

14   known to Mr. Kallman and Bears' attorneys that we would be

15   filing the complaint.

16        So, Mr. Kallman knew back in 2006 that he had a

17   potential claim against Capitol or Shapiro.  He knew in

18   September 2011 that the trustee was going to pursue him either

19   through settlement or through litigation.  I think it's safe

20   to say in either event Mr. Kallman had a right, whether it was

21   through settlement or through litigation, to assert a claim

22   against Bank of America if his only claim against Capitol or

23   Nevin Shapiro arose out of having to pay the trustee a

24   settlement amount or a judgment amount.

25        So, I know Mr. Orshan is new to the case and he

1   wasn't counsel for Mr. Kallman since September 2011 through

2   June 2012, but as the court stated in U.S. Oil & Gas, the

3   defense have an obligation to protect their interest whether

4   it's through contribution or otherwise knowing that a trustee,

5   a receiver is pursing them either through a settlement or

6   through litigation.  So, to say that Mr. Kallman did not know

7   of his obligations to protect his interests, his client's,

8   that is, against Bank of America until he was served with a

9   complaint or the complaint was filed at the end of June is

10  just not accurate.  He was always aware for the past year.

11          THE COURT:  Okay.  Thank you.

12          MR. FREEDMAN:  The only other thing I want to mention

13  to the Court is, and it's cited in our complaint, it's our

14  view that Mr. Kallman is net winner of over $800,000; and,

15  finally, the red flags, the term red flags that Mr. Orshan has

16  used throughout his presentation, those are the same red flags

17  that the Court heard the trustee speak of in discussing the

18  discovery that the trustee was seeking against Bank of

19  America.  In other words, the red flags are the same red flags

20  that we were claiming should have put the bank on notice of

21  the Capitol Ponzi scheme.  In other words, Mr. Kallman's

22  claims, as well as the trustee's claims, obviously, arise out

23  of the same red flags, the same set of facts and

24  circumstances.

25          I forgot one other point, if I may indulge the Court.

1   I've got clarification or authorization from Bank of America.

2   Based upon all of the documents that we received throughout

3   that year and a half of discovery, through the time that Bank

4   of America had -- sorry -- Capitol had its accounts at Bank of

5   America through the time that Mr. Kallman and Bears had his

6   relationship with Capitol Investments throughout the thousands

7   and thousands of documents that we scoured there was not one

8   reference in those documents to any conversation between Bank

9   of America, Kallman or Bears, or any representation made by

10  Mr. Del Rio of the creditworthiness of Capitol Investments or

11  Nevin Shapiro.  So, even if they got all those documents,

12  there's nothing there.

13          THE COURT:  Okay.

14          MR. FREEDMAN:  Thank you.

15          THE COURT:  Mr. Liebler.  Again, remembering today is

16  the discovery dispute.

17          MR. LIEBLER:  I'm sorry, Your Honor?

18          THE COURT:  Today is the discovery dispute not the

19  approval of the settlement.

20          MR. LIEBLER:  Yes, I understand.  I just wanted to

21  clarify three things; one, if I gave the Court an impression

22  that we confirmed the communications took place in 2002, that

23  wasn't my intent.  We don't have any -- to my knowledge, any

24  evidence other than Mr. Kallman's purported assertion.

25          THE COURT:  So, you're acknowledging the assertion

1    not whether or not it's true?

2          MR. LIEBLER:  Yes, Your Honor.

3          THE COURT:  Okay.

4          MR. LIEBLER:  Next, when I said that the Kallman

5    entities are creditors, I meant to say that they haven't filed

6    a proof of claim, that they may be creditors in a broader

7    sense; and, third, with respect to how in an adversary against

8    the trustee one could establish a claim against Bank of

9    America, it would be similar, I would presume, to the way in

10   state court in a tort action that one would prove a Fabre

11   defendant or some obligation.  It would be sort of a trial

12   within a trial.

13         Having said that, Your Honor, I have nothing further.

14   Thank you.

15         THE COURT:  Okay.  All right.  I'm going to go --

16   again, I'm just dealing with the discovery dispute today.

17         Mr. Orshan, in terms of timing, while I appreciate

18   that you did not get involved until later, it sounds to me as

19   if your client had plenty of notice.  If the theory is that

20   the damages are related to obtaining potential claims that the

21   trustee is asserting against your client, then your client has

22   known since September of 2011 and had plenty of time once he

23   received notice of the settlement to make a determination

24   whether he had troubles with the bar order.  So, the timing of

25   your discovery request and the procedure are -- it is

1   untimely, but I'm going to go past that and go to the nature

2   of the information that you're requesting; and that is this,

3   is that to the extent that your client believed that he had a

4   cause of auction, that goes outside the scope of the claims

5   that the trustee is making.  That is not something that

6   anything that has occurred in this bankruptcy had any impact

7   on; and so, if he needed discovery to determine whether he had

8   to have cause of action, he had at least since September of

9   2011, although again, if it's an independent cause of action

10  and not one derivative of the trustee's claim against him,

11  that's not something that he's known since at least 2006, when

12  he had this alleged theft.  If that's the operative date.  So,

13  again, I'm not saying that for purposes of statute of

14  limitations, I'm not saying it for anything except in terms of

15  what is it exactly that you needed so badly for next Monday

16  and anything that you needed so badly is not something that

17  just came up and it's not something that I'm going to put all

18  of this on hold so that your client can now get information

19  that your client had all this time, even if it was only from

20  September of 2011, to ask for.

21        So, you'll have to put on whatever case it is that

22  you believe it is necessary for you to put on next week and I

23  just want to make sure that the parties understand the

24  framework of the inquiry so that no one is prejudiced; and

25  that is -- in fact, Mr. Liebler, you may or may not be

1   correct, that the Kallmans fall within a broader sense of

2   creditor.  I'm not going to get into that argument today.  For

3   purposes of next Monday, I'm going to recognize your client's

4   standing to object.  If in the future, outside of the

5   litigation with the trustee, Mr. Kallman decides that he's

6   going to bring an action against your client, then your client

7   can, obviously, raise the fact that the litigation is barred,

8   but that's not something I need to decide for purposes of next

9   Monday, but for purposes of next Monday, without opining as to

10  whether there's actual standing, I'm going to allow standing.

11        So, Mr. Orshan, you put on your best case next Monday

12  that you believe -- but, again, the issue is going to be the

13  fair and equitable nature of the bar order with respect to

14  your client, the framework as is set out in my Solar case and

15  in the In re SportsStuff case, which is an Eighth Circuit

16  B.A.P. opinion.  If it falls outside of that framework, then

17  you're going to have a real problem convincing me about the

18  bar order.  So, that's the framework within which I'm going to

19  analyze your client's objection if your client should decide

20  to go forward.

21        In the meantime, with respect to the issues you've

22  raised regarding how you raised Bank of America's complicity,

23  I did not read the bar order or the settlement to preclude

24  what Mr. Liebler described for purposes of description only as

25  a Fabre defense because I don't think we call it that in

1  federal court, but perhaps you all will get to someplace that

2  will circumvent all or part of your objection.  That's totally

3  up to you, but that's the framework of the inquiry.

4        I'm going to grant the motion for protective order.

5  Your client, the Bank of America, is not required to answer

6  and I also find that Mr. Del Rio was not properly served; and

7  so, he's not required to respond, although he's not here to

8  say to the contrary, but since he wasn't properly served

9  because Mr. Liebler was not his attorney, I can't direct that

10 that discovery be produced, even though we're not here on your

11 motion to compel.  I'm just previewing any issues that come up

12 next week.

13       All right.  So, Mr. Orshan, do you have any

14 questions?

15       MR. ORSHAN:  I do not.

16       THE COURT:  Not you.  Mr. Liebler, do you have any

17 questions?

18       MR. LIEBLER:  No, Your Honor.

19       THE COURT:  Okay.  Then I'll see you all next Monday

20 at 1:30.

21       (Thereupon, the hearing was concluded.)

22

23

24

25

Page 33

1                          CERTIFICATE

2

3      STATE OF FLORIDA)

4      COUNTY   OF   DADE)

5            I, the undersigned, do hereby certify that

6        the foregoing is a true and correct transcription

7        of my stenographic notes of the proceedings had

8        and taken at the time and place herein set forth.

9                    DATED at Miami, Dade County, Florida

10       on this 27th day of July, 2012.

11

12

13                         MAGGIE RUBIO
                           Court Reporter

14

15

16

17

18

19

20

21

22

23

24

25